INDUSTRIA LECHERA DE PUERTO RICO, demandante y recu-
rrente, *v.* SECRETARIO DE HACIENDA DEL ESTADO LIBRE
ASOCIADO DE PUERTO RICO, demandado y recurrido.

*Número:* R-66-348     *Resuelto:* 27 de marzo de 1968

*A. De Jesús Matos* y *R. De Jesús Cintrón,* abogados de la recurrente; *J. B. Fernández Badillo, Procurador General,* y *Adaljisa Díaz de Collazo, Procuradora General Auxiliar,* abogados del recurrido.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Expedimos auto de revisión para revisar la sentencia que declaró sin lugar la demanda de la recurrente Industria Lechera de Puerto Rico, Inc., en solicitud de devolución de contribuciones pagadas sobre la propiedad. El pleito se sometió por las alegaciones y éstas a la vez son muy sucintas.

La Sala sentenciadora concluyó como cuestión de hecho que el 9 de enero de 1962 el Secretario de Hacienda tasó e impuso a la corporación Industria Lechera de Puerto Rico la contribución territorial correspondiente al año 1962–63; que el 22 de junio de 1962 entró en vigor la Ley Núm. 72 que eximió del pago de contribución a la propiedad mueble, terrenos, edificios, equipo, accesorios y vehículos de la Industria Lechera de Puerto Rico; la recurrente pagó la contribución

impuesta de $10,709.90 y acudió al tribunal para que se le reintegrara dicha cantidad.

En derecho concluyó la Sala sentenciadora que la cuestión en litigio era determinar si la Industria Lechera de Puerto Rico estaba o no exenta del pago de contribuciones territoriales para el año 1962–63. A tal efecto expresó—citando *García Comercial* v. *Secretario de Hacienda*, 80 D.P.R. 765 (1958); *Destilería Serrallés* v. *Tribunal de Contribuciones*, 70 D.P.R. 69 (1949); *Buscaglia, Tes.* v. *Tribl. Contribuciones*, 68 D.P.R. 37 (1948); *Buscaglia* v. *Tribunal de Contribuciones*, 63 D.P.R. 39 (1944); *Roig* v. *Sancho Bonet*, 54 D.P.R. 649 (1939) y *Asociación de Maestros* v. *Sancho Bonet*, 54 D.P.R. 536 (1939)—que la fecha en que surge el estado contributivo de la propiedad es el 1ro. de enero de cada año; que fue al 1ro. de enero de 1962 cuando surgió el estado contributivo de la propiedad aquí tributada a los fines de determinar si la misma estaba o no sujeta al pago de contribuciones territoriales para el año económico 1962–63; y que la Ley Núm. 72 de 21 de junio de 1962 no contiene cláusula de retroactividad, ni puede interpretarse el haber sido la intención del legislador el que operara retroactivamente. Con esas expresiones declaró sin lugar la demanda.

■ Son correctas las conclusiones de la Sala sentenciadora anteriormente expuestas, en el sentido de que al 1ro. de enero de cada año se determina el estado contributivo de la propiedad a los fines de la imposición y pago de contribuciones territoriales para el ejercicio económico que comienza el 1ro. de julio de ese año y se extiende hasta el 30 de junio del año siguiente. Según reza el Art. 298 del Código Político los bienes raíces se tasan, para imponérseles contribución, a nombre de la persona que fuere dueña de ellos o que estuviere en posesión de los mismos el 1ro. de enero, o a cuyo nombre aparece la propiedad inscrita en el Registro de la Propiedad en esa fecha si el Secretario de Hacienda no tuviere conocimiento que otro sea el dueño.

Es igualmente correcto que en esa persona recae la responsabilidad de la contribución según el estado contributivo de la propiedad al 1ro. de enero, pero ella no viene por ley obligada a hacer efectivo el pago de la misma sino a partir del 1ro. de julio siguiente—Código Político, Art. 330.

■ Es correcto también, a la luz de nuestras decisiones, que cambios en el titular de la propiedad o modificaciones de la misma ocurridos entre el 1ro. de enero y el 1ro. de julio de ordinario no alteran ni afectan esa responsabilidad contributiva.

■ Los anteriores son principios generales de indiscutible vigencia. No obstante, cada litigio en que están envueltos los mismos debe considerarse y resolverse a la luz de sus hechos y circunstancias particulares; y siendo las exenciones contributivas actos de liberalidad del Legislador, ya que como se ha dicho, tienen el efecto de ser una asignación de fondos públicos en beneficio de la persona o entidad agraciada con la exención, los tribunales debemos buscar siempre el dar cumplimiento a la voluntad legislativa y no reconocer más de lo que el legislador quiso otorgar, aunque tampoco debemos derrotar esa voluntad reconociendo menos, o negando lo que el legislador quiso dar. La expresión que tantas veces encontramos repetida en la doctrina al efecto de que las exenciones contributivas deben ser interpretadas con rigor o limitadamente, no puede tomarse en todo caso sin distinción de manera axiomática, como cosa separada de la voluntad del legislador. [1]

El caso de *Buscaglia, Tes.* v. *Tribl. Contribuciones*, 68 D.P.R. 37 (1948) citado por la parte recurrida como de particular aplicación, envolvía la Ley Núm. 61 de 5 de mayo de 1945. Éste fue un estatuto de carácter general para definir lo que eran materias primas y eximirlas del pago de

---

[1] Cf. *Textile Dye Works, Inc.* v. *Srio. de Hacienda*, 95 D.P.R. 708 (1968).

contribuciones. En su Art. 3 se dispuso que la "materia prima" que pudiera garantizarse estar destinada a la producción de artículos terminados estaría exenta del pago de contribuciones sobre la propiedad mientras se encontrara en poder de su productor, importador a Puerto Rico, productor del artículo terminado o de algún distribuidor intermediario que la tuviera destinada para la venta o entrega a un productor de artículos terminados, en cuya fabricación entrara esa materia prima. Esta Ley empezó a regir el 1ro. de julio de 1945. La allí contribuyente pretendía estar exenta del pago de la contribución para el año 1945-46 sobre materia prima que pudo haber tenido en su poder el 1ro. de enero de 1945. Decidimos que la Ley Núm. 61 aprobada posteriormente en mayo de ese año no tenía efecto retroactivo y por consiguiente no alteraba la obligación contributiva ya recaída.

Debe anotarse que el Art. 3 de esta Ley fue redactado en forma similar al Art. 291 del Código Político que en forma general declara qué bienes están exentos de imposición. La Ley decretó que cierta materia prima, según fue definida, estaría exenta de tributación al determinarse el estado contributivo, en las condiciones ahí expresadas.

En el caso aludido se cita con algún énfasis el de *National Hats Co.* v. *Sancho, Tes.,* 65 D.P.R. 241 (1945). En éste se trataba de una contribuyente a quien la Comisión de Servicio Público le había concedido exención del pago de contribuciones por un período entre el 2 de marzo de 1932 y 31 de enero de 1935. La Comisión actuó en virtud de la autoridad que le confería la Ley Núm. 40 de 25 de abril de 1930 sobre industrias nuevas, una ley general sobre la materia. Expirada la concesión el 31 de enero de 1935 la contribuyente, el 4 de febrero, solicitó una prórroga de la misma y la Comisión, en 4 de mayo de 1936, concedió un nuevo período por 5 años, con efecto retroactivo desde el 1ro. de febrero de 1935. Sostuvimos que si bien la legislatura tenía

facultad para delegar en un organismo administrativo el conceder una exención contributiva, en momento. alguno autorizó a la Comisión a concederla con efecto retroactivo. Teniendo sólo carácter prospectivo la concesión otorgada el 4 de mayo de 1936, la contribuyente debía tributar por la imposición hecha el 15 de enero de dicho año para el ejercicio de 1936–37, fecha ésa en que, sin el efecto retroactivo que anulamos, no existía exención de tributo.

La decisión de *Asociación de Maestros* v. *Sancho Bonet*, 54 D.P.R. 536 (1939), citada invariablemente en controversias de esta naturaleza, se basó en la disposición general del Art. 291 del Código Político que declara qué propiedades no deberán ser tributadas. En 1931 el Pueblo de Puerto Rico vendió a la Asociación un solar sujeto a que ella erigiera en él una edificación dentro del término de cinco años. En abril de 1935 se inauguró el edificio "Templo del Maestro". En enero 15 de ese año se había tasado dicho solar para el ejercicio fiscal 1935–36. Bajo lo dispuesto en el inciso (e) del Art. 291 al efecto de que estará exento de tributación todo edificio utilizado para centro educativo, literario, científico o recreativo . . . y toda superficie de terreno que no exceda de cinco cuerdas en el cual dicho edificio esté construido . . . la posición de la Asociación era que habiendo terminado su edificio en abril de 1935 ella gozaba de exención contributiva el 1ro. de julio sobre el predio en que se construyó. Bajo los principios generales enunciados sostuvimos que esa modificación de la propiedad no alteraba su obligación contributiva surgida en 15 de enero de ese año. Este caso tiene la importancia de exponer la. razón de las normas ya dichas, así: (pág. 541)

"La necesidad de fijar una fecha, anterior al momento físico del cobro, en que el estado puede definitivamente calcular sus ingresos para el siguiente año fiscal, es obvia. Toma tiempo el preparar la lista de las tasaciones sobre las propiedades, las planillas y los recibos de contribuciones. El estado contributivo

(taxable status) de la propiedad debe permanecer inalterado después de determinado período de tiempo y con anterioridad a la fecha del pago de la contribución, puesto que el Tesorero debe tener una base fija sobre la cual flotar sus empréstitos, aumentar o reducir las contribuciones, etc.

Ésta, opinamos, es la razón fundamental de la regla. Además, el cobro resultaría incierto y poco práctico si el estado tuviera que permitir exenciones, seguir la pista a nuevos compradores o distribuir las contribuciones entre los dueños subsiguientes durante el mismo año."

Podrá observarse que la razón de ser de la norma judicialmente sentada es una de conveniencia práctica.

En *Roig* v. *Sancho Bonet, Tes.*, 54 D.P.R. 649 (1939), estaba envuelta la venta de una parcela hecha por el contribuyente al Municipio de Humacao el 25 de mayo de 1935. Al cobrársele la contribución para el año 1935–36 sobre dicha parcela el contribuyente resistió el pago por el fundamento de que la contribución constituía un gravamen sobre la propiedad y que su dueño al 1ro. de julio de 1935 lo era el Municipio de Humacao. Bajo la regla general expresada rechazamos esta contención.

Los casos señalados y otros más que no necesitamos resumir, envolvían exenciones a la luz de disposiciones legislativas de tipo general como lo son las leyes específicamente mencionadas y el Art. 291 del Código Político. Ésa es la situación, inclusive, en el caso más reciente de *Valdés Cobián* v. *Srio. de Hacienda*, 93 D.P.R. 825 (1966). Aquí estaba envuelta otra ley de tipo general, la Ley Núm. 60 de 20 de junio de 1958. En su Art. 3 dispuso que aquellos solares afectados por el mapa oficial adoptado por la Junta de Planificación a tenor de los Arts. 11 y 19 de la Ley Núm. 213 de 1942 que se encontraban desocupados, o sin uso, y que no estaban produciendo rentas, quedaban exentos de toda contribución sobre la propiedad durante todo el tiempo en que se mantuvieran en tales condiciones y mientras durara la imposibilidad de construir que motivaba la exención. Igual-

mente, quedaban exentos los solares edificados que se encontraban desocupados. o sin uso, y que no producían rentas durante todo el tiempo en que se mantuvieran en tales condiciones y mientras durara la imposibilidad de construir. Al contribuyente se le impuso el 1ro. de enero de 1960 la contribución sobre determinada propiedad para el año 1960–61. Alegando que desde el 2 de junio de 1960 el inmueble había estado afectado por un proyecto de mejora pública, a tenor de la referida Ley Núm. 60 solicitó el contribuyente la devolución. de la contribución pagada para ese ejercicio fiscal. Por razón de que al 1ro. de enero de 1960 no estaba la propiedad en esa fecha afectada por un proyecto de mejora pública, se denegó el reintegro. Sostuvimos al Secretario de Hacienda, siguiendo las normas generales de derecho ya expresadas.

Los casos reseñados son ejemplos de la norma seguida por las razones prácticas y de conveniencia que expusimos en *Asociación de Maestros*, supra, de no alterar la responsabilidad contributiva fijada al 15 de enero antes, y posteriormente al 1ro. de enero, por razón de cambios de dueño, modificación de la propiedad o de su uso o cualesquiera otras razones. Repetimos que se trataba de exenciones bajo leyes de aplicación general. Veamos ahora el caso que nos ocupa.

En 21 de junio de 1962 la Asamblea Legislativa aprobó la Ley Núm. 72 a la cual le dio vigencia inmediata. Su único fin, según el título, fue para eximir *del pago* de contribuciones sobre la propiedad y de la contribución sobre ingresos a la Corporación Industria Lechera de Puerto Rico, Inc., la aquí recurrente. En su Art. 1ro. eximió del pago de contribuciones sobre la propiedad los bienes que tuviera y los que adquiriera en el futuro la Industria Lechera de Puerto Rico para el desarrollo de sus fines y propósitos. En el Art. 2 declaró exentos del pago de toda clase de contribución o derechos los ingresos de dicha Industria Lechera. En su Art. 3 eximió del pago de arbitrios, derechos y cualquiera otro tipo

de impuesto el equipo, maquinaria, vehículos y accesorios adquiridos o importados por la Industria Lechera de Puerto Rico para ser utilizados en sus operaciones. Todas las exenciones dispuestas se mantendrían en vigor mientras la totalidad de las acciones del capital de esta Corporación aquí recurrente pertenecieran al Fondo para el Fomento de la Industria Lechera, creado por la Ley Núm. 34 de 11 de junio de 1957.

Las disposiciones de esta Ley están precedidas de una Exposición de Motivos que ofrece claramente las razones para su adopción. [2]

---

[2] "Durante el transcurso de los últimos años, la industria lechera del país, se ha venido desarrollando en forma tal que ha pasado a convertirse en la fase más importante de la agricultura en Puerto Rico.

Dicho desarrollo se ha debido en parte, a la reglamentación establecida por la Ley núm. 34 de 11 de junio de 1957, que establece una garantía de precios tanto al nivel del productor como al nivel de los elaboradores.

Por otro lado Industria Lechera de Puerto Rico, Inc., una corporación comenzada con capital privado, y las acciones de la cual pertenecen hoy al Fondo Para el Fomento de la Industria Lechera, ha contribuido grandemente al desarrollo de la industria en general, ya que a través de ella la oficina de la Reglamentación ha podido mantener canalizados efectivamente los excedentes estacionales de la industria, lográndose en esta forma utilizar dichos excedentes y sostener el precio de los mismos en forma que no se perjudique económicamente el productor de leche.

Hoy día la referida corporación Industria Lechera de Puerto Rico, Incorporada, resulta ser un instrumento sumamente eficaz en la utilización de los excedentes estacionales de leche que anteriormente se derramaban en las quebradas, ya que a través del uso que a dichos excedentes da la corporación, los mismos en vez de botarse y perderse, hoy se convierten en productos útiles tales como queso, mantequilla, mezcla para mantecados, etc., que contribuyen a mejorar la economía en general del país, ya que en su elaboración se provee empleo a distintas personas, permanece en Puerto Rico dinero que en otra forma se exportaría para comprar esos mismos productos fuera del país, y se mantiene una constante demanda por leche excedente a un precio razonable en beneficio de productores y elaboradores.

Comoquiera que aún la industria lechera de Puerto Rico es susceptible de un mayor crecimiento, y la forma más efectiva de estimular y ampliar dicho crecimiento la constituye el lograr mantener un mercado expansivo para la leche producida, que a su vez requiera y sostenga económicamente una industria que produzca excedentes continuos, resulta ser de vitalísima importancia el mantener y operar una planta elaboradora

El informe de la Comisión de Agricultura de la Cámara sobre el P. de la C. 504 convertido posteriormente en la Ley Núm. 72, expresó: (*Diario de Sesiones*, Vol. 15, Tomo 4, pág. 1712)

"En relación a esta medida, la Comisión escuchó al Sr. Plácido Acevedo, Administrador de la Oficina de la Reglamentación de la Industria Lechera y al Sr. Manuel Juarbe, Secretario Auxiliar a cargo de Rentas Públicas del Departamento de Hacienda favoreciendo ambos la misma.

Mediante este proyecto se exime del pago de contribuciones sobre la propiedad y de ingresos a la Corporación de la Industria Lechera de Puerto Rico Inc., mientras todas las acciones del capital de dicha corporación pertenezcan al Fondo para el Fomento de la Industria Lechera creado por la Ley núm. 34 de 11 de junio de 1957, enmendada.

Industria Lechera de Puerto Rico Inc. se creó con el propósito de ayudar a la estabilización de la industria, mediante la utilización de los excedentes de leche en la elaboración de productos tales como mantequilla, queso, etc. Esta corporación fue establecida mediante aportaciones de productores y elaboradores de leche fresca. En 1959, las acciones de esta corporación fueron compradas por el Fondo para el Fomento de la Industria Lechera.

La exención contributiva que se le otorgó a esta empresa vence en 1961-62. El mejor y continuo funcionamiento de esta fábrica es indispensable para el desarrollo de la industria lechera puertorriqueña."

En junio 21, 1962, cuando cobró vigencia la Ley Núm. 72 que rige este caso, las acciones de la recurrente pertenecían al Fondo creado por la Ley Núm. 34 de 11 de junio de 1957. El hecho no surge del récord, muy abreviado, pero lo hace constar el Informe transcrito. Véase el Vol. XXIX de las *Opiniones del Secretario de Justicia*, pág. 78, donde se publica una Opinión al Secretario de Agricultura de 12 de mayo

---

de productos derivados de la leche, capaz de poder elaborar los excedentes que se produzcan, no importa la cantidad de los mismos.

Por considerar que las operaciones de Industria Lechera de Puerto Rico, Inc., constituye un colorario indispensable para el crecimiento y expansión de la industria lechera del país se presenta esta ley."

de 1958, sosteniendo la facultad legal del Fondo creado por la Ley Núm. 34 de 1957 para invertir $100,000 en la corporación privada Industria Lechera de Puerto Rico, Inc., mediante la adquisición de acciones.

El problema de la producción de leche y de la industria lechera en Puerto Rico ha constituido una seria preocupación de la Asamblea Legislativa. Por la Ley Núm. 106 de 28 de junio de 1956 se creó un Administrador de la Reglamentación de la Industria Lechera, y se creó una Junta consultiva compuesta de cinco personas para que lo asesoraran, tres de ellas representantes del interés público, un representante de los productores y un representante de la industria de pasterizar y elaborar productos lácteos. Entendió la Asamblea Legislativa que esta fase de la economía puertorriqueña debía ser atendida y reglamentada dado los problemas que existían en torno a la misma. Un año después la Ley Núm. 106 quedó sustituida por la Ley Núm. 34 de 11 de junio de 1957 en la cual, además de la reglamentación, se creó un Fondo para el Fomento de la Industria Lechera.

La Ley Núm. 34 está precedida de una Declaración de Propósitos en donde se habla de la existencia de una situación caótica en el negocio de la industria lechera de Puerto Rico y de intereses en conflicto de los elaboradores entre sí y de éstos y los de los productores, de la amenaza de que esa situación produjera un colapso de esta importante industria, de la imposibilidad de la manufactura de los excedentes de leche debido a existir esos conflictos, de la destrucción potencial del producto y de excedentes que se desperdician; de problemas de mercadeo del producto; y de la necesidad de la intervención de la Asamblea Legislativa directamente con esta industria en el ejercicio de su poder policial a los efectos de promover el bienestar general.

Fue decisivo para la Sala sentenciadora, y lo destaca la parte recurrida, la ausencia de una expresión de retroactividad en la Ley Núm. 72 de 1962. A la luz de las normas ge-

nerales dichas, el hecho es importante. A la luz de la situación especial que rige este caso, la ausencia de tal expresión no es fatalmente destructiva del derecho de la recurrente. Hay, además, una explicación:

Según el criterio de la Asamblea Legislativa expuesto por su Comisión de Agricultura de la Cámara, la exención de la cual ya estaba disfrutando la recurrente vencía en 1961-62. Si era así, la propiedad no tenía condición de ser tributable en enero 1 de 1962. Hubiera sido innecesaria y superflua una expresión de retroactividad en el estatuto aprobado en 21 de junio de 1962, con vigencia inmediata. No hay prueba en el récord, aunque hay expresiones en los alegatos, al efecto de que la exención terminaba en el año 1960-61. Si lo último era lo correcto, ello no altera el hecho de que la Asamblea Legislativa actuó en la creencia de que la expiración fue un año más tarde, en lo que concierne a la necesidad de hacer una expresión de retroactividad.

La situación de este caso guarda más analogía con *Destilería Serrallés* v. *Tribl. de Contribuciones*, 70 D.P.R. 69 (1949), posterior al de *Buscaglia* v. *Tribl. de Contribuciones*, 68 D.P.R. 37 (1948), antes citado. La Ley Núm. 53 de 1945, efectiva el 5 de mayo de ese año, eximió del pago de contribuciones sobre la propiedad aquellos productos que mejoraban en calidad con el envejecimiento. La exención cubría todos los años fiscales subsiguientes al primero en que hubieran sido depositados para envejecer. Los que estaban así depositados antes de entrar en vigor esa Ley por lo menos un año y hubieran pagado la contribución por ese año, quedaban también exentos en años siguientes. En 15 de enero de 1945 la allí contribuyente tenía depositado en envejecimiento una gran cantidad de ron y había pagado la contribución por el año 1944-45.

Revocando la sentencia del tribunal de instancia que negó el derecho de la Destilería a no pagar contribución para el año 1945-46, dijimos: (pág. 71)

"Convenimos con el Tesorero en que la obligación de pagar la contribución para 1945–46 surgió el 15 de enero de 1945. *Buscaglia, Tes.* v. *Tribl. de Contribuciones,* 68 DPR 37, y casos allí citados. Pero antes de que la peticionaria tuviera por ley que pagar la contribución, la Asamblea Legislativa aprobó la Ley núm. 53. Esta ley dispone la condonación del pago de contribución para el año 1945–46 sobre cualesquiera productos que como el ron aquí envuelto caigan dentro de sus disposiciones."

■ En el caso de autos se trata de una exención aún más particular, porque la Ley Núm. 72 se aprobó únicamente para beneficio de la recurrente, y no se aplica a contribuyente otro alguno. La exoneración del pago no se limitó a la contribución de la propiedad, en cuyo caso surge el mecanismo éste especial del 1ro. de enero, con las razones prácticas y de conveniencia administrativas que apuntamos en *Asociación de Maestros,* supra, sino que cubrió también la contribución sobre ingresos, y todo otro tipo de arbitrio, impuesto o derecho fiscal. La única condición fue que todas las acciones del capital de la recurrente pertenecieran al Fondo creado por la Ley Núm. 34 de 1957. El Informe de la Comisión de Agricultura anteriormente copiado expresa que esas acciones pasaron al Fondo desde 1959. Nada hay en el récord que indique que el 21 de junio de 1962 al entrar en vigor la Ley Núm. 72 de ese año, esas acciones no seguían en poder del Fondo.

Finalmente, aun cuando aceptemos, distinto a la conclusión del Informe legislativo, que la exención de la cual ya disfrutaba la recurrente no se extendía durante el año 1961–62 y había terminado en 1960–61, el mandato de la Asamblea Legislativa contenido en la Ley Núm. 72 disponiendo que esta recurrente *no pagara* contribución, arbitrio, derecho o impuesto alguno antes de que ella viniera obligada a realizar ese pago en 1ro. de julio de 1962, es demasiado claro como para derrotarlo judicialmente recurriendo a unas normas de conveniencia de tipo general establecidas en circunstancias que no guardan relación.

*Se revocará la sentencia que denegó a la recurrente el reintegro de las contribuciones en litigio, y se dictará otra concediendo dicho reintegro.*