# 2000 DTA 167

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**

LUIS A. RIVERA SIACA, *ET AL*
Demandantes-Apelados

v.

SECRETARIO DE HACIENDA
Demandado-Apelante

Núm. KLAN-2000-00399

San Juan, Puerto Rico, a 22 de junio de 2000

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano,
el Juez Aponte Jiménez y la Juez Feliciano Acevedo

Alfonso de Cumpiano, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Departamento de Hacienda (el Departamento) presentó recurso de apelación en solicitud de que revoquemos la sentencia sumaria dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, mediante la cual se ordenó al Secretario de Hacienda cancelar las deficiencias contributivas notificadas a los apelados, Sr. Luis A. Rivera Siaca, su esposa y la sociedad de gananciales, incluyendo los intereses y penalidades.

La controversia central consiste en determinar si erró el tribunal al concluir que los cánones de arrendamiento recibidos por el alquiler del edificio de las oficinas centrales del Departamento de Educación estaban exentos del pago de contribuciones sobre ingresos, de conformidad con lo dispuesto por ley.

Examinados los alegatos de las partes, el dictamen apelado, el expediente y el derecho aplicable, determinamos que no erró el tribunal y que procede confirmar la sentencia.

### I

El 30 de diciembre de 1996, el Departamento notificó a los apelados una serie de deficiencias contributivas en las planillas de contribución sobre ingresos correspondientes a los años 1990, 1991, 1992 y 1993. Dichas deficiencias se basaron en que éstos no incluyeron en el ingreso bruto de cada uno de los referidos años la suma de $3,918,861.96 por cánones de arrendamiento recibidos por el alquiler del edificio en que ubican las oficinas centrales del Departamento de Educación. Las deficiencias, intereses y penalidades, según fueron notificados, ascendían a un total de $8,121,829.56.

Inconformes con la notificación del Departamento, los apelados presentaron, el 30 de enero de 1997, demanda contra éste, en la que impugnaron las deficiencias contributivas. Solicitaron la cancelación en su totalidad de las deficiencias, los intereses y penalidades a base de que las aludidas rentas estaban excluidas, de conformidad con las disposiciones de la sección 22(b)(8) de la entonces vigente Ley de Contribuciones Sobre Ingresos de Puerto Rico de 1954. 13 L.P.R.A. sec. 3022(b)(8). ▮ En la alternativa, los apelados solicitaron que se les permitiera reclamar deducciones contra dicho ingreso que no fueron consideradas por el Departamento, las cuales reducirían el monto de lo adeudado.

Una vez prestada el monto de la fianza por los apelados, el Departamento presentó su contestación. Aceptó algunas de las alegaciones de la demanda y negó total o parcialmente otras. Los apelados solicitaron que se dictara sentencia sumaria por no haber controversia real sustancial en cuanto a ningún hecho material y por tratar el asunto de una controversia estrictamente de derecho. Entre sus planteamientos, argumentaron que la práctica del Departamento en la interpretación de la disposición concernida, considerando las rentas objeto del presente litigio exentas de tributación para años anteriores, impedía al Secretario de Hacienda variar su posición. Junto a la moción de sentencia sumaria, incluyeron, entre otros documentos relativos a la previa interpretación administrativa de la disposición, una declaración jurada del Sr. Luis A. Rivera Siaca. En ésta se describe detalladamente el uso de las oficinas y la naturaleza de los programas ubicados en el edificio en cuestión.

El Departamento, en su oposición, replicó a los argumentos de los apelados sobre la interpretación de la ley y las previas prácticas administrativas y solicitó se determinaran correctas en derecho las deficiencias.

El tribunal celebró vista argumentativa sobre los planteamientos presentados en las aludidas mociones. Solicitó a las partes efectuaran una inspección con el propósito de corroborar las funciones que lleva a cabo el Departamento de Educación en el edificio y que sometieran un escrito de estipulación sobre dichas funciones. También les solicitó que presentaran en forma conjunta el historial de ambas Cámaras Legislativas de la Ley Núm. 84 de 30 de mayo de 1970, que enmendó la sección 22 de la Ley de Contribuciones Sobre Ingresos de 1954, para incluir la exención a que se refiere este caso.

467

Una vez las partes cumplieron con lo ordenado, el tribunal determinó que no existía controversia real sustancial en cuanto a ningún hecho material y que procedía la sentencia sumaria como cuestión de derecho a favor de los apelados. Conforme los documentos sometidos y los hechos estipulados, formuló determinaciones de los hechos materiales. Incluyó conclusiones de derecho a la luz de éstos, analizó las disposiciones legales pertinentes y su historial legislativo e interpretó, bajo las normas de hermenéutica legal aplicables a los casos contributivos, que las rentas recibidas por los apelados estaban exentas de tributación bajo la ley y que no procedían las deficiencias contributivas. En virtud de ello, el tribunal ordenó la cancelación en su totalidad de las deficiencias notificadas, los intereses y penalidades. Oportunamente, el Departamento solicitó reconsideración, los apelados presentaron su oposición y el tribunal la declaró sin lugar. El Departamento presentó una segunda moción de reconsideración, la cual también fue denegada.

El Departamento solicita, en el recurso, que revoquemos la sentencia apelada, alegando que en la interpretación de la ley el tribunal se desvió de la norma de interpretación restrictiva de las leyes contributivas. Plantea, también, que erró al incluir en sus determinaciones de hechos actuaciones previas del Departamento reconociendo la exención en situaciones como la invocada por los apelados para sostener su conclusión.

Los apelados en su alegato arguyen, en esencia, que la interpretación judicial es cónsona con lo dispuesto en ley, con su intención y con las normas jurisprudenciales sobre interpretación de leyes contributivas. Señalan que las referencias en la sentencia a las previas actuaciones del Departamento, no sirvieron de base para el dictamen.

## II

De entrada, debemos dejar establecido que no se cuestiona el mecanismo de sentencia sumaria utilizado para resolver este caso. Las partes circunscriben la controversia a la interpretación y aplicación de una disposición legal, bajo los hechos sustanciales estipulados. Debemos también señalar que la sentencia apelada está debidamente fundamentada, cubre y analiza los aspectos medulares de la controversia y, a nuestro juicio, es correcta en derecho. Por tanto, es suficiente que demos énfasis sólo a lo más relevante, tomando en cuenta los planteamientos de las partes.

### -A-

En su primer señalamiento de error, el Departamento alega que el tribunal de instancia erró al interpretar de manera amplia la ley y concluir que la exención dispuesta en la anterior sección 22 (b) (8), incluia el edificio en el cual ubican las oficinas centrales del Departamento de Educación.

Examinemos el lenguaje de la referida sección y su interpretación por el tribunal.

La sección 22(b)(8), *supra*, establece que:

*"Sección 22. Ingreso bruto*

*(a)...*

*(b) Exclusiones del ingreso bruto. Las siguientes partidas no estarán incluidas en el ingreso bruto y estarán exentas de tributación bajo este subtítulo:*

*(1)...*

*...*

*(8) Ingresos provenientes de edificios arrendados o rentados al Gobierno del Estado Libre Asociado de*

*Puerto Rico para hospitales públicos, casas de salud o de convalecencia y facilidades complementarias a dichos hospitales y casas de salud o de convalecencia, tales como viviendas para enfermeras, cafetería, servicios de lavandería, centros de rehabilitación física y vocacional; para escuelas públicas, y facilidades complementarias a la educación, tales como bibliotecas, librerías, residencias de estudiantes y profesores y centros de servicios múltiples como los de cafetería, reunión y esparcimiento; o en la construcción de edificios para ser arrendados a entidades de fines no pecuniarios que los utilicen como hospitales, casas de salud o de convalecencia y facilidades físicas complementarias."*

Esta sección, en la parte que nos concierne, excluye del ingreso bruto sujeto a tributación los cánones de arrendamiento recibidos del alquiler de edificios al Gobierno de Puerto Rico para uso de escuelas públicas, facilidades complementarias a la educación, y centros de servicios múltiples. No limita la exención al alquiler de edificaciones para escuelas públicas, sino que comprende otras estructuras complementarias a la educación. A manera de ejemplo, enumera estructuras que se consideran facilidades complementarias a la educación (tales como bibliotecas, librerías, residencias de estudiantes y profesores) y centros de servicios múltiples (como las de cafetería, reunión y esparcimiento), sujetos a la exención.

El tribunal resolvió a base de lo informado conjuntamente por las partes sobre las funciones, programas y propósitos de las diferentes oficinas del Departamento de Educación durante los años de las deficiencias notificadas que el edifico donde éste ubica constituye una facilidad complementaria a la educación dentro del significado de la sección 22(b)(8) previamente transcrita. En su detallada explicación, consideró que todos los servicios que se brindan en el edificio se relacionan exclusivamente con la administración, dirección y supervisión del sistema educativo de Puerto Rico y comprenden la prestación de servicios a los profesores y estudiantes participantes de ese sistema.

Según surge del Informe sobre Inspección al Edificio del Departamento de Educación, estipulado por las partes, en el edificio se encuentran ubicadas facilidades, tales como la Secretaría Auxiliar de Planificación y Desarrollo Educativo que está encargada de la planificación escolar en sus diferentes aspectos, el Centro de Información, Diseminación y Lectura que incluye una biblioteca para uso de los empleados, personal docente y público en general, el Centro de Recursos para la Alfabetización y Educación de Adultos (CRAEDA) que provee el apoyo necesario para erradicar el analfabetismo para el año 2000, la División de Planificación, Investigación y Evaluación que está a cargo de un sinnúmero de programas, tales como la Oficina de Derechos Civiles, el Instituto de Preparación Tecnológica y Articulación Universitaria, Educación/Agrícola, Economía Doméstica, Educación Vocacional Industrial y la Biblioteca de la Secretaría Auxiliar de Educación Tecnológica, todos ellos a cargo de coordinar y dirigir actividades directamente relacionadas con la educación desde el mismo edificio o en las diferentes regiones educativas, y finalmente, el Centro de Desarrollo Preescolar que incluye una escuela maternal y otra preescolar. (Apéndice del recurso, pág. 341).

Se puede apreciar de lo anterior que las facilidades ubicadas en el edificio del Departamento de Educación están relacionadas con la educación, no sólo en lo administrativo, sino en cuanto a actividades de servicios a ésta, y en programas de formulación de la política pública educativa. Respecto a los ejemplos específicos de la sección que examinamos, en el edificio se encuentran varias bibliotecas, algunas de ellas para uso público, se brinda orientación al personal docente y se coordinan servicios múltiples necesarios para el sostenimiento del sistema educativo de Puerto Rico.

Al efectuar su interpretación, el tribunal analizó, en primer lugar, la letra de la disposición de ley. De ésta surge claramente, como señalamos, que la exención no se limita a las escuelas públicas, sino que incluye las facilidades complementarias a la educación. La frase *"tales como"*, previa al listado incluido en la disposición de referencia, hace del listado uno ejemplificativo y no taxativo. Como lo reconoce el Departamento, está resuelto que en la redacción de un estatuto sobre exención contributiva en el que se utiliza la frase *"tales como"* y luego se describen situaciones, las palabras específicas enumeradas son sólo ilustrativas y no limitativas de las situaciones en que aplicaría la exención. *Tugwell, Gobernador v. Corte*, 64 D.P.R. 220 (1944).

Por tanto, la frase *"tales como"*, seguida del término facilidades complementarias a la educación de la sección 22(b)(8), puede incluir otras estructuras análogas o facilidades cónsonas con los ejemplos enumerados en la disposición.

La letra de la disposición no permite inferir que ésta se limita a facilidades en que se brinde servicio únicamente a los estudiantes. Tampoco surge de ésta que las estructuras tengan que estar ubicadas dentro o anejadas a las escuelas. Los ejemplos de ley incluyen facilidades en las cuales se prestan servicios de variada naturaleza, tanto a profesores como a estudiantes del sistema escolar, que pueden estar localizados en sitios fuera del plantel escolar.

En segundo lugar, el tribunal consideró el historial legislativo de la disposición legal bajo análisis. La sección 22(b)(8) fue incorporada a la Ley de Contribuciones Sobre Ingresos de 1954 mediante la Ley Núm. 84 de 30 de mayo de 1970. El proyecto de ley que dio base a ésta, sólo confería exención contributiva a los intereses sobre obligaciones cuyo importe era invertido en la construcción de edificios para ser arrendados al Gobierno para escuelas, facilidades públicas complementarias a la educación y centros de servicios múltiples. P. de la C. 820 (1970). En el Senado, el referido proyecto fue enmendado para extender la exención contributiva provista a las rentas recibidas por el propietario de los edificios.

El récord legislativo demuestra que el propósito de la medida es crear incentivos adicionales a los inversionistas para promover mejoras y nuevas construcciones de propiedades inmuebles para liberar al Estado de tener que dedicar fondos del fisco para la construcción de edificios a ser destinados para fines públicos en las áreas de la educación y la salud. Aparte de la intención legislativa de expandir los beneficios contributivos como inicialmente contemplados, el récord legislativo no ofrece guía alguna para la interpretación del lenguaje *"facilidades complementarias a la educación"*, incorporado en la disposición legal que tratamos. Sí podemos indicar que no hay referencia alguna en el récord legislativo, como no lo hay en la ley, a que las facilidades complementarias se circinscriban a las escuelas públicas o que se deban encontrar dentro o anejadas a los planteles escolares. (Apéndice del recurso, págs. 291-340).

No hay controversia en cuanto a que los apelados financiaron la totalidad del costo de adquisición y mejoras del edificio arrendado, sin que el Departamento de Educación o el Estado aportaran cantidad de dinero alguna. (Determinaciones de Hechos 6 y 7, Apéndice del recurso, pág. 6). Ese hecho es definitivamente cónsono con el propósito de la ley de liberar al Estado de la utilización de fondos públicos para la construcción de edificaciones dedicadas a fines públicos en el área de la educación. La inversión del edificio efectuada por los apelados proveyó al Estado de facilidades complementarias a la educación sin tener que utilizar fondos públicos en su construcción y mejoras.

Finalmente, el tribunal consideró y reconoció las normas de hermenéutica legal respecto a que las exenciones contributivas deben ser interpretadas restrictivamente en contra de aquél que alega tener derecho a ellas. Estas se caracterizan como un privilegio, sujeta su concesión a los límites y restricciones que el legislador tenga a bien imponer. Al respecto, nuestro Tribunal Supremo ha expresado que las exenciones contributivas constituyen actos de liberalidad del legislador cuyo efecto neto es asignar fondos públicos a favor de la persona o entidad beneficiada con la exención, por lo cual no debe reconocerse más de lo que el estatuto otorga. *Industria Lechera de P.R. v. Secretario,* 95 D.P.R. 839, 842 (1968).

El Tribunal Supremo ha efectuado interpretaciones estrictas y restrictivas en contra del contribuyente respecto a asuntos específicos, tales como en *Pardavco, Inc. v. Secretario,* 104 D.P.R. 115 (1975), tributación de intereses recibidos por una corporación extranjera provenientes de depósitos existentes en bancos extranjeros en Puerto Rico; *Central Igualdad, Inc. v. Secretario,* 83 D.P.R. 45 (1961), bonificación concedida a colonos relacionados con la empresa y no a todos los colonos; *Descartes v. Tribunal de Contribuciones,* 71 D.P.R. 248 (1950), ingreso recibido por una sociedad no pagado a los socios; *Buscaglia v. Tribunal de Contribuciones,* 61 D.P.R. 585 (1947), deducciones sobre intereses pagados a otro miembro de una familia. Pero ha reconocido,

igualmente, nuestro más alto foro judicial, que la interpretación restrictiva de un estatuto que establece exención contributiva no puede llegar a destruir el verdadero propósito del legislador, no puede tomarse como cosa separada de la voluntad del legislador, no puede ser tan estrecha que derrote su propósito, y que lo que se requiere es que la interpretación sea razonable. *Industria Lechera de P.R. v. Sec. de Hacienda, supra; Esso Standard Oil Co. v. Autoridad de los Puertos,* 95 D.P.R. 772 (1968); *Licorería Trigo Inc. v. Scrio. de Hacienda,* 94 D.P.R. 270, 279 (1967); *Francis Adams v. Tribunal de Contribuciones,* 74 D.P.R. 19, 24 (1952); *Figueroa & Gautier v. Domenech, Tes.,* 53 D.P.R. 875, 879 (1938).

En otras palabras, la regla de la interpretación estricta de las exenciones cede ante las razones de política pública que enmarcan la ley. La interpretación restrictiva y estrecha que derrote el propósito por el cual se estableció la exención no puede prevalecer. R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico,* Vol. II, **Publicaciones J.T.S.,** 1987, pág. 461.

Se ha expresado que la base para aplicar la regla interpretativa estricta es minimizar el trato diferente y propiciar imparcialidad e igualdad en los contribuyentes y que las razones de dicha regla no aplican en casos de exenciones en beneficio del Gobierno o sus agencias. Por otro lado, tribunales de otras jurisdicciones han examinado más allá del carácter gubernamental o privado del contribuyente y enfocado el carácter de la actividad particular que está sujeta a la contribución. Ciertamente, el fin público o beneficio gubernamental es un criterio a tomar en cuenta al efectuar una interpretación de la exención. Véase Sutherland Stat. Const. sec. 66.09 (5th Ed.).

En el presente caso, el fin que tuvo el legislador era promover incentivos para que inversionistas proveyeran al Estado con mejoras y nuevas construcciones para la salud y la educación, áreas de gran importancia social para nuestro pueblo. Los apelados invirtieron en el edificio arrendado al Estado, liberándolo de su construcción. La aplicación de la exención a las rentas provenientes del edificio no se aparta indebidamente de la norma de interpretación restrictiva, guarda armonía con la regla que preceptúa que las leyes en materia contributiva, si bien deben considerarse de manera estricta, deben recibir una interpretación razonable, tendente a llevar a efecto y no derrotar el propósito y la intención del legislador. En fin, a tenor de los fundamentos de la sentencia apelada, el tribunal no hizo caso omiso de las normas interpretativas en cuanto a las exenciones contributivas. Las razones de política pública que movieron al legislador a conceder la exención dan fundamento a su interpretación. Su actuación enmarca en lo expuesto por el legislador en el estatuto, se ajusta a la intención legislativa, no amplía de manera irrazonable la ley y encaja en los parámetros de los ejemplos dispuestos en la misma.

Por otro lado, la interpretación propuesta por el Departamento no encuentra apoyo en la letra de la ley, ni en su historial legislativo. Su contención estriba en que la interpretación judicial del estatuto en cuestión es más amplia que la voluntad expresa del legislador. Se ampara en las normas de hermenéutica tradicionalmente adoptadas para las exenciones contributivas, pero desatiende el llamado jurisprudencial y doctrinario que éstas no pueden aplicarse para derrotar el propósito de la ley, ni el lenguaje del estatuto, ni para obtener un resultado irrazonable. El historial legislativo, de manera alguna sustenta la interpretación del Departamento.

No tenemos base alguna en derecho para sustituir la razonada interpretación incluida en la sentencia, por la del Departamento. Procede, por tanto, confirmar la sentencia en cuanto dispuso que el edificio del Departamento de Educación constituye una facilidad física complementaria a la educación, que las rentas devengadas por los apelados por el alquiler del mismo están exentas de tributación para propósitos de la anterior sección 22(b) (8) y que ordenó la cancelación en su totalidad de las deficiencias contributivas notificadas, de los intereses y penalidades.

-B-

En su segundo señalamiento de error, el Departamento plantea que erró el tribunal al incluir como parte de sus determinaciones de hechos, actuaciones previas de funcionarios del Departamento para concluir que los

ingresos de rentas en este caso son excluibles del ingreso bruto. No se cometió error en la inclusión de dichas determinaciones, cuya existencia encuentra apoyo en el expediente. La variación posterior en la interpretación por la agencia no significa que no existieron. Por otra parte, surge de la sentencia apelada que el tribunal no entró a determinar si las interpretaciones administrativas a las que se refirió y que formaron parte del expediente, constituian una práctica administrativa del Departamento que le impidiera variar su posición. Por el contrario, específicamente señaló que no era necesario entrar en la consideración de ese planteamiento. Se limitó a señalar que dichas determinaciones eran consistentes con lo resuelto por el tribunal. Está claro en la sentencia que la decisión se basó exclusivamente en la interpretación judicial de la disposición legal de referencia.

### III

Por los fundamentos expuestos, se confirma la sentencia de 4 de octubre de 1999 dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General