Versión para imprimir


EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pfizer Pharmaceuticals, Inc. y Pfizer Pharmaceuticals, Limited<br><br>Peticionarios<br><br>v.<br><br>Municipio de Vega Baja<br><br>Recurrido | Certiorari<br><br>2011 TSPR 93<br><br>182 DPR \_\_\_\_ |

Número del Caso:   CC        - 2008 - 607

Fecha: 17 de junio de 2011

Tribunal de Apelaciones:

       Región Judicial de Bayamón Panel V

Juez Ponente:        Hon. Luis Rivera Román

Abogados de la Parte Peticionaria:

       Lcdo. César Gómez Negrón
       Lcdo. Charles Bimbela
       Lcdo. Tomás A. Román Santos

Abogados de la Parte Recurrida:

       Lcdo. Miguel A. Romero Lugo
       Lcdo. Héctor Quijano Borges

Amicus Curiae    :

       Lcdo. Oscar Pérez Sosa
       Lcdo. Jaime Riera Seivane
       Lcdo. José L. Ramírez Iri       zarry
       Lcdo. Roberto J. Monserrate
       Lcdo. Juan A. Marqués Díaz
       Lcdo. Carlos E. Serrano
       Lcda. Laura M. Crumley Alvarez
       Lcda. Roxana Cruz Rivera
       Lcdo. Salvador J. Antonneti Stutts
       Lcda. Amaya Iraolagoitia
       Lcda. Leslie Y. Flores

Materia:    Impugnación de Deficiencia en Pago de Patente Municipal

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficia        l de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pfizer Pharmaceuticals, Inc. y
Pfizer Pharmaceuticals, Limited

       Peticionarios                    *Certiorari*

          v.

                                CC-2008-0607

Municipio de Vega Baja

       Recurrido

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

San Juan, Puerto Rico, a 17 de junio de 2011.

Hoy examinamos una Sentencia del Tribunal de Apelaciones mediante la cual se restituye una Notificación de Deficiencia en el pago de patentes municipales. En el dictamen recurrido, el foro intermedio apelativo determinó que unos intereses, producto de unos préstamos realizados por dos (2) negocios exentos a favor de dos (2) corporaciones extranjeras no dedicadas a industria o negocio en Puerto Rico, no gozaban de exención de patentes municipales. Esto por no ser ingreso de fomento industrial al amparo de la Ley Núm. 135 de 2 de diciembre de 1997, según enmendada, conocida como

Ley de Incentivos Contributivos del 1998, 13 L.P.R.A. secs. 10101 *et seq.*

Revocamos la determinación del tribunal apelativo intermedio. Resolvemos que los Decretos de Exención Industrial otorgados en el caso de autos facultaron al Municipio de Vega Baja a imponer el pago de patentes sobre tales ingresos, a pesar de que los mismos no serían tributables en esta jurisdicción de otra manera. No obstante, el Municipio de Vega Baja está limitado a la cantidad dispuesta en la ley y acordada en el Decreto.

## I

Pfizer Pharmaceuticals, Inc., es una corporación organizada bajo las leyes del Estado de Delaware y Pfizer Pharmaceuticals Limited es una corporación organizada bajo las leyes de las Islas Caimán. Ambas corporaciones están debidamente autorizadas para realizar negocios en Puerto Rico.

Tanto Pfizer Pharmaceuticals, Inc. como Pfizer Pharmaceuticals Limited, en adelante las peticionarias, son subsidiarias poseídas por Pfizer, Inc., una corporación organizada bajo las leyes estatales de Delaware que no está dedicada a hacer negocios en Puerto Rico. Durante los años en controversia, ambas mantenían operaciones de manufactura en el Municipio de Vega Baja, en adelante el Municipio, y eran concesionarias y tenedoras de Decretos de Exención Contributiva Industrial para la producción, venta y

distribución de drogas otorgados bajo las disposiciones de la Ley Núm. 135, *supra*.

Según consta en los Decretos 98-135-I-100 y 00-135-I-75, las partes pactaron que "los ingresos de fuentes de fuera de Puerto Rico", según determinado en la Sec. 1123(c) de la Ley Núm. 120 de 31 de octubre de 1994, conocida como Código de Rentas Internas de Puerto Rico de 1994, en adelante, el Código de Rentas Internas de 1994, 13 L.P.R.A. sec. 8523, se considerarían "ingresos de fomento industrial", en adelante IFI, bajo la Ley Núm. 135, *supra*. Por consiguiente, estarían sujetos a la tasa fija provista, y exentos en un sesenta por ciento (60%) del pago de patentes municipales.[1]

---

[1] El Decreto para el caso 98-135-I-100 fue emitido a favor de Warner-Lambert, Inc. y Parke-Davis Pharmaceuticals Limited el 17 de agosto de 1999. Posteriormente, ambas corporaciones fueron fusionadas a las peticionarias. Por un lado, las operaciones llevadas a cabo en Puerto Rico por Warner Lambert, Inc. fueron asumidas por Pfizer Pharmaceuticals, Inc. durante el año fiscal 2000-2001. A su vez, Parke-Davis Pharmaceuticals Limited se convirtió posteriormente en Pfizer Pharmaceuticals Limited. Apéndice de la petición de *certiorari*, pág. 223. El mismo expresaba que:

> BE IT FURTHER DECREED, that the Grantee herein shall be subject, during any taxable year in which it is able to increase its employment levels to those indicated below, to the following fixed income tax rates on its industrial development income ("IDI"), as defined below, during the exemption period of this grant, and from and after the effective date of said period, instead of any other tax provided by law. …[I]t being hereby determined by the Secretary of State that said reduced rate is in the best economic and social interests of Puerto Rico, in consideration of the special nature of the exempted business, the substantial employment that said business generates and the importance that the operation of said business has to the economy of Puerto Rico. For purposes of this provision, IDI shall include income received on investments described in Section 2(j) of the 1998 Act, and in the case of PPDL, IDI shall include the income of PPDL that is derived form sources outside of Puerto Rico.
> …

Durante los años fiscales 1999-2000, 2000-2001 y 2001-2002, las peticionarias recibieron ingresos provenientes de préstamos realizados a favor de la compañía matriz y de una entidad afiliada en Dublín, Irlanda. Ninguna de estas compañías está dedicada a la industria o negocio en Puerto Rico. Asimismo, para estos años fiscales las peticionarias pagaron la patente municipal, y sometieron las Declaraciones de Volumen de Negocios y Estados Financieros auditados.[2] Al así hacer, incluyeron los intereses que generaron los préstamos como IFI en las correspondientes

---

> BE IT FURTHER DECREED, that the Grantee is hereby exempted during the exemption period of this grant from the following taxes at the percentages, terms and conditions set forth below:
>
> …
>
>> 2. Sixty percent (60%) from license fees, excise and other municipal taxes, levied by any ordinance of any municipality. The portion taxable shall be subject, during the term of the grant, to the tax rate in effect on the date the grant is signed, notwithstanding any later amendment to the grant to cover operations in another municipality or municipalities; … Apéndice de *certiorari*, págs. 197 y 199.

Por otro lado, el decreto emitido el 29 de diciembre de 2000 para el caso 00-135-I-75 a favor de Pfizer Pharmaceuticals, Inc., Pfizer Pharmaceuticals, LLC y Pfizer Pharmaceuticals Limited autorizaba la inclusión de Warner-Lambert, Inc. y Parke-Davis Pharmaceuticals Limited bajo el mismo. Éste expresa que:

> "the term, "Business IDI" as used in this clause shall additionally include the total net industrial development income accrued by the additional grantees from any service activities covered by the W-L Grant, and, in the case of PDPL, the net industrial development income provided in Section 2(a)(2) of the Act, and the net income from sources without Puerto Rico provided in Section 1123(c) of the Code…" Apéndice de la petición de *certiorari*, pág. 213.

[2] Las peticionarias señalan ciertas demoras en someter los estados financieros auditados de alguno de los años en controversia en parte por la adquisición de las operaciones mundiales de Warner-Lambert & Company y porque lo auditores externos no pudieron emitir los mismos a tiempo. Estos argumentos así como la prueba traída para sustentarlos merecieron entero crédito tanto en el Tribunal de Primera Instancia como el Tribunal de Apelaciones.

Declaraciones de Volumen de Negocios por entender que éstos constituían ingresos de fuentes fuera de Puerto Rico.

El 11 de diciembre de 2002 el Municipio notificó a Pfizer Pharmaceuticals, Inc. ciertas deficiencias preliminares en el pago de patentes municipales para los años fiscales 1999-2000, 2000-2001, 2001-2002 y 2002-2003. Además, notificó a Pfizer Pharmaceuticals Limited una deficiencia preliminar para el año 2002-2003. Luego de la oportuna solicitud de reconsideración y vista administrativa, el Municipio notificó a las peticionarias las deficiencias finales, intereses y penalidades el 20 de agosto de 2003.[3]

El 18 de septiembre de 2003, las peticionarias presentaron una Demanda impugnando, *inter alia*, las Notificaciones de Deficiencias contributivas en las patentes municipales. Luego de varios trámites procesales, el Tribunal de Primera Instancia dejó sin efecto tales Notificaciones al concluir que los Decretos eran obligatorios, y que de manera clara e inequívoca disponían que los ingresos de fuentes fuera de Puerto Rico constituye IFI. Además, eliminó unas penalidades impuestas y reconoció un crédito por una partida erróneamente tributada.[4]

---

[3] Las deficiencias, intereses y penalidades notificadas a Pfizer Pharmaceuticals, Inc. ascendían a $1,515,789.83, mientras que las notificadas a Pfizer Pharmaceuticals Limited totalizaban la suma de $1,511,426.73.

[4] Apéndice de la petición de *certiorari*, pág. 129.

Inconforme, el Municipio acudió ante el Tribunal de Apelaciones. Dicho foro, mediante Sentencia dictada el 31 de marzo y notificada el 9 de abril de 2008, determinó que los ingresos por intereses recibidos por los préstamos no provenían de la producción y venta de drogas – operaciones por las que se les otorgaran los Decretos - como tampoco de las actividades de inversión elegibles descritas en la Ley Núm. 135, *supra*, a ser consideradas IFI. Por ende, concluyó que tenían que tributar el sesenta por ciento (60%) remanente por concepto de patentes municipales. Los demás extremos de la Sentencia fueron confirmados.[5]

Luego de que la moción de reconsideración presentada fuera denegada, las peticionarias acuden ante nos señalando el error siguiente:[6]

> **Erró el Hon. T.A. al concluir que el ingreso por intereses de préstamos que PPL y PPI recibieron de su compañía matriz Pfizer Inc. y a una afiliada en Irlanda, no constituía ingreso de fomento industrial (IFI), por no estar comprendido en la operación declarada exenta en el Decreto y que los mismos son totalmente tributables.**

Evaluada la petición de *certiorari* acordamos expedir. Con el beneficio de la comparecencia de ambas partes, así

---

[5] Apéndice de la petición de *certiorari*, pág. 42.

[6] Por otro lado, el Municipio presentó una petición de *certiorari* el 8 de junio de 2008 en la que recurría de las partes de la Sentencia del Tribunal de Apelaciones que confirmaban la Sentencia del Tribunal de Primera Instancia. La petición fue declarada "no ha lugar".

como de la Compañía de Fomento Industrial de Puerto Rico, la Pharmaceutical Industry Association of Puerto Rico y la Asociación de Industriales de Puerto Rico, en calidad de *amicus curiae*, estamos en posición de resolver.[7]

## II

**A. Contribuciones sobre ingresos de una corporación extranjera dedicada a industria o negocio en Puerto Rico.**

Nuestra Constitución encomienda el poder para imponer y cobrar contribuciones a la Asamblea Legislativa; cuerpo que, a su vez, puede autorizar su imposición y cobro por los municipios. Art. VI, Sec. 2. Const. E.L.A., L.P.R.A., Tomo I. *Café Rico, Inc. v. Mun. de Mayagüez*, 155 D.P.R. 548, 552-553 (2001); *Levy, Hijo v. Mun. de Manatí*, 151 D.P.R. 292 (2000). Bajo este poder de tributación, la Asamblea Legislativa proclamó el Código de Rentas Internas de 1994, *supra*, documento que recoge toda la legislación contributiva de nuestro ordenamiento jurídico. *Orsini García v. Srio. de Hacienda*, res. el 18 de diciembre de 2009; 177 D.P.R. __; 2009 T.S.P.R. 190, 2010 J.T.S. 9.[8]

---

[7] El 3 de noviembre de 2008 aceptamos la intervención de la Compañía de Fomento Industrial de Puerto Rico, la Pharmaceutical Industry Association of Puerto Rico y la Asociación de Industriales de Puerto Rico como *amicus curiae*.

[8] La Secc. 6100.01 de la Ley Núm. 1 de 31 de enero de 2011, conocido como Código de Rentas Internas para un Nuevo Puerto Rico, derogó la Ley Núm. 120 de 31 de octubre de 1994, según enmendada, 13 L.P.R.A. sec. 8006 *et seq.*, conocida como Código de Rentas Internas de Puerto Rico de 1994. No obstante,

"[l]a derogación de cualquier disposición del Código de Rentas Internas de Puerto Rico de 1994 no afectará actos realizados o

El Código de Rentas Internas de 1994 establece aquellas disposiciones que le son aplicables a las corporaciones y sociedades extrajeras. 13 L.P.R.A. sec. Sec. 8401. A esos efectos, el ingreso bruto de este tipo de corporación incluye solamente: (1) el ingreso bruto que sea derivado de fuentes dentro de Puerto Rico, y (2) el ingreso bruto que esté realmente relacionado con la explotación de una industria o negocio en Puerto Rico. 13 L.P.R.A. Sec. 8615(c). En cuanto a las corporaciones y sociedades extranjeras dedicadas a industria o negocios en Puerto Rico, se dispone que éstas tributarán sobre su ingreso neto que esté realmente relacionado con la explotación de una industria o negocio en Puerto Rico de conformidad con las Secs. 8415, 8416, 8417 y 8521(c) del Código de Rentas Internas de 1994. 13 L.P.R.A. sec. 8615(b). Para hacer sentido de tales expresiones, la ley define el ingreso bruto y neto de fuentes dentro y fuera de Puerto Rico, así como, las reglas especiales relativas a ingreso realmente relacionado con la explotación de una industria o negocio en Puerto Rico. 13 L.P.R.A. sec. 8523. Desglosemos estos términos para su mejor comprensión.

---

cualquier derecho adquirido o cualquier procedimiento o demanda que haya comenzado en cualquier causa civil, antes de tal derogación, pero todos los derechos y obligaciones según dicha ley continuarán y podrán ser aplicados en la misma como si dicha derogación no se hubiese hecho". Sec. 6093.01, Ley Núm. 1, *supra*.

La Sec. 1123(a) del Código de Rentas Internas de 1994, *supra*, enumera las partidas de intereses, dividendos y beneficios, entre otras, que constituyen el "ingreso bruto de fuentes en Puerto Rico". *Íd.* Entre éstas se incluyen los intereses sobre bonos, pagarés u otras obligaciones que devenguen intereses, de personas residentes, naturales o jurídicas.  13 L.P.R.A. sec. 8523(a)(1). Por otro lado, constituyen "ingreso bruto de fuentes fuera de Puerto Rico" los intereses que no sean los derivados de fuentes dentro de Puerto Rico. 13 L.P.R.A. sec. 8523(c)(1).

De igual forma, se considerará "ingreso realmente relacionado con la explotación de una industria o negocio dentro de Puerto Rico" todo ingreso, ganancia o pérdida de fuentes dentro de Puerto Rico.  13 L.P.R.A. sec. 8523(f)(2). *A contrario sensu*, y salvo contadas excepciones, ningún ingreso, ganancia o pérdida de fuentes fuera de Puerto Rico se tratará como ingreso realmente relacionado. 13 L.P.R.A. sec. 8523(f)(3). De manera excepcional, se considerará ingreso realmente relacionado con la explotación de una industria o negocio en Puerto Rico, en lo pertinente, el ingreso, la ganancia o pérdida de fuentes fuera de Puerto Rico

> …por un individuo no residente o por una corporación o sociedad extranjera si dicha persona tiene una oficina u otro local fijo de negocios dentro de Puerto Rico a la cual o al cual dicho ingreso, ganancia o pérdida le es atribuible y dicho ingreso, ganancia o pérdida:
> …

(ii) consiste de dividendos o intereses, o ganancia o pérdida de la venta o permuta de acciones o pagarés, bonos u otras evidencias de deudas **y es derivada de la explotación activa de un negocio bancario o financiero o negocio similar dentro de Puerto Rico, o es recibida por una corporación cuyo negocio principal sea el traficar en acciones o valores por cuenta propia**….(Énfasis suplido). 13 L.P.R.A. sec. 8523(f)(3)(B).

Así, al deducirle a las partidas de ingreso bruto aquellas deducciones permitidas por ley, se obtiene entonces el ingreso neto que esté realmente relacionado con la explotación de una industria o negocio en Puerto Rico. 13 L.P.R.A. secs. 8523(b) y 8617.

Ahora bien, al cumplir con nuestra función interpretativa tenemos como norte que "[c]uando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14. En el caso de los estatutos contributivos, hemos expresado que éstos no se interpretarán de forma extensiva, sino de una forma justa, para cumplir con sus propios y expresos términos. Asimismo, deberán interpretarse a favor de la no imposición de la contribución cuando de éstos no surge claramente el propósito de imponerla. *Yiyi Motors, Inc. v. E.L.A.*, res. el 14 de octubre de 2009; 177 D.P.R. __; 2009 T.S.P.R. 159; 2009 J.T.S. 162; *B.B.C. Realty v. Secretario Hacienda*, 166 D.P.R. 498 (2005). Véase, además: R. Elfren Bernier y otros, *Aprobación e Interpretación de*

*las Leyes en Puerto Rico*, San Juan, Ed. Publicaciones JTS Inc., 1987, pág. 464.

En cuanto a las exenciones contributivas que los estatutos contributivos otorgan, éstas deben ser interpretadas restrictivamente, es decir, a favor de la no existencia de la exención, puesto que son privilegios excepcionales o gracias que concede el Estado para negar los efectos de las normas tributarias generales. No obstante, deben interpretarse de forma que no frustre la intención legislativa. *Orsini García v. Srio. de Hacienda*, *supra*; *Interior Developers v. Mun. de San Juan*, res. el 28 de diciembre de 2009; 177 D.P.R. __; 2009 T.S.P.R. 191; 2010 J.T.S. 10; *Director Of. Inspección Notarías v. Colón*, 131 D.P.R. 102 (1992).

Discutidos estos preceptos, examinemos aquellos aspectos del Programa de Incentivos Industriales pertinentes para el caso ante nos.

**B. Programa de incentivos industriales de Puerto Rico**

Puerto Rico ha fomentado su desarrollo económico mediante la inversión de capital promovida por el Programa de Incentivos Industriales. Este Programa ha estado en vigor por más de seis (6) décadas. Empero, éste ha requerido actualización constante por el Estado de forma tal que se pueda mantener la competitividad de la Isla frente a otras jurisdicciones. Esto ha conllevado, por

consiguiente, la adopción de incentivos contributivos para la industria en general, así como su paulatina transformación. Por lo tanto, han existido numerosas leyes de incentivos industriales, cada una de ellas modificada en repetidas ocasiones.[9] No obstante, el caso de autos se restringe a la evaluación de la Ley Núm. 135, *supra*. Bajo este marco procedemos a su estudio.

La Ley Núm. 135, *supra*, otorga incentivos contributivos a negocios orientados "hacia la creación real de empleos y la inversión directa, tanto en adiestramiento, planta física e investigación y desarrollo dentro de Puerto Rico como para retención de empleos". 1997 Leyes de Puerto Rico 637. Esto lo logra principalmente mediante la concesión de tasas fijas de contribución sobre el ingreso de fomento industrial, así como de exenciones de

---

[9] Han existido seis (6) leyes de incentivos industriales previo a la Ley Núm. 73 de 28 de mayo de 2008, conocida como Ley de Incentivos Económicos para el Desarrollo de Puerto Rico, 13 L.P.R.A. secs. 10641 *et seq*. Éstas son: la Ley Núm. 184 de 13 de mayo de 1948, de la cual todas las exenciones contributivas otorgadas a su amparo expiraron el 30 de junio de 1962; la Ley Núm. 6 de 15 de diciembre de 1953, conocida como Ley de Incentivo Industrial de Puerto Rico de 1954, 13 L.P.R.A. secs. 10001 *et seq*.; la Ley Núm. 57 de 13 de junio de 1963, conocida como Ley de Incentivo Industrial de Puerto Rico de 1963, 13 L.P.R.A. secs. 10012 *et seq*.; Ley Núm. 26 de 2 de junio de 1978, conocida como Ley de Incentivos Industriales de Puerto Rico de 1978, 13 L.P.R.A. secs. 10024 *et seq*.; Ley Núm. 8 de 24 de enero de 1987, conocida como Ley de Incentivos Industriales de Puerto Rico de 1987, 13 L.P.R.A. secs. 10038 *et seq*.; Ley Núm. 135 del 2 de diciembre de 1997, conocida como Ley de Incentivos Contributivos del 1998, 13 L.P.R.A. secs. 10101 *et seq*. Cada una de ellas ha sido enmendada en diversos momentos para responder a las necesidades del país.

La Ley Núm. 135, *supra*, permitía las solicitudes de exención a su amparo hasta el 30 de junio de 2008. No obstante, "[l]as imposiciones contributivas provistas por [ella] permanecerán en vigor durante el término en que las concesiones de exención contributiva otorgadas bajo la misma permanezcan vigentes". Sec. 21 de la Ley Núm. 135, *supra*. 1997 Leyes de Puerto Rico 699.

contribuciones municipales y estatales, deducciones especiales y créditos que quedan estipulados en Decretos de Exención. 13 L.P.R.A. secs. 10101-10105. Tales Decretos se consideran de la naturaleza de un Contrato entre el concesionario, sus accionistas, socios o dueños y el Gobierno de Puerto Rico; y tienen usualmente una vigencia de entre diez (10) a veinticinco (25) años, dependiendo de la zona de desarrollo industrial en que se localice el negocio. 13 L.P.R.A. secs. 10112(f) y 10105(d). Estos son, por lo tanto, "un instrumento que utiliza Puerto Rico, para fomentar la industria y la inversión productiva". *Textile Dye Works, Inc. v. Secretario de Hacienda*, 95 D.P.R. 708, 713 (1968).

En extrema síntesis, el procedimiento de la Ley Núm. 135, *supra*, era el siguiente. El negocio elegible presentaba una solicitud de Decreto de Exención Contributiva debidamente juramentada con el pago de los derechos correspondientes, y aquellas Declaraciones Juradas requeridas o necesarias para justificar su solicitud ante el Director de la Oficina de Exención Contributiva Industrial adscrita entonces al Departamento de Estado, en adelante Director.[10] 13 L.P.R.A. sec. 10112. Una vez recibida, copia de ésta era enviada al Secretario de Hacienda para que verificara el cumplimiento de los

---

[10] "El Director podrá celebrar aquellas vistas, públicas y/o administrativas que considere necesarias". 13 L.P.R.A. sec. 10112(c).

accionistas con su responsabilidad contributiva y al Administrador de Fomento Económico para que rindiera un Informe de Elegibilidad. Además, era remitida a otras agencias que a juicio del Secretario de Estado debían tener copia. *Íd*.

Posteriormente, con la información recibida, el Director preparaba un Proyecto de Decreto a ser circulado entre las agencias concernidas, así como al municipio correspondiente y al Centro de Recaudaciones de Ingresos Municipales para su evaluación económica y fiscal. *Íd*. Al respecto, el estatuto especifica que

> Toda recomendación desfavorable deberá ser acompañada por las razones para tal recomendación. En caso de que cualquiera de tales agencias o municipios no someta el informe u opinión correspondiente dentro de un término de treinta (30) días de habérsele notificado de dicho proyecto de decreto, se estimará que dicho proyecto de decreto ha recibido una recomendación favorable de parte de las agencias o municipios notificados, y el Secretario de Estado tomará la acción correspondiente con respecto a la solicitud de exención. 13 L.P.R.A. sec. 10112(j)(2).

Ya recopilados los Informes, el Director sometía el Proyecto de Decreto de Exención y su recomendación a la consideración del Secretario de Estado, quien debía emitir una determinación final al respecto.[11] 13 L.P.R.A. sec.

---

[11] Hasta el 31 de diciembre de 1995 las solicitudes de exención se dirigían al Gobernador, quien estaba encargado de aprobar y denegar las concesiones mediante su endoso y firma. Así constaba en la Ley Núm. 6, *supra*; la Ley Núm. 57, *supra*; Ley Núm. 26, *supra*, y la Ley

10112(j). La determinación a la que llegara el Secretario de Estado, así como "[t]odas [sus] decisiones y determinaciones … bajo [la Ley Núm. 135, *supra*] serán finales y contra las mismas no procederá revisión judicial o administrativa u otro recurso a menos que específicamente se disponga otra cosa".[12] 13 L.P.R.A. sec. 10114(a). Todo este proceso se encontraba delimitado dentro de una serie de términos establecidos en la referida ley.

Detengámonos a analizar la naturaleza del Decreto[13] y las funciones del Secretario de Estado bajo la Ley Núm. 135, *supra*. Como expresáramos, la ley establece que éste conforma un Contrato entre el concesionario, sus accionistas, socios o dueños y el Gobierno de Puerto Rico. 13 L.P.R.A. sec. 10112(f). Este último comparece mediante la figura del Secretario de Estado, funcionario encargado de aprobar o denegar las concesiones originales de exención

---

Núm. 8, *supra*. No obstante, en aras de agilizar el trámite que culmina en un Decreto se delegó en el Secretario de Estado las responsabilidades del proceso. Esto pues, es el primero en orden de sucesión al cargo de Gobernador. Desde entonces la Oficina de Exención Contributiva Industrial se encontró adscrita al Departamento de Estado. Véase, Exposición de Motivos, Ley Núm. 218 de 27 de octubre de 1995. 1995 Leyes de Puerto Rico 1173. Por otro lado, al amparo de la Ley Núm. 73, *supra*, la Oficina de Exención Contributiva Industrial está adscrita al Departamento de Desarrollo Económico y Comercio, y corresponde al Secretario de Desarrollo la determinación final con relación a la aprobación o denegación de concesiones originales de exención contributiva, salvo contadas excepciones. 13 L.P.R.A. sec. 10653(2)(F).

[12] La Ley Núm. 135, supra, autoriza a que "[c]ualquier concesionario adversamente afectado o perjudicado por cualquier acción tomada por el Secretario de Estado y/o cancelando una concesión de exención… tendrá derecho a revisión judicial". 13 L.P.R.A. sec. 10114(b).

[13] La Ley Núm. 135, supra, señala que tienen el mismo significado los términos siguientes: "concesión de exención contributiva industrial", "decreto de exención", "exención contributiva", "exención" o "decreto". 13 L.P.R.A. sec. 10101(m).

contributiva y cuya determinación es final y no revisable. 13 L.P.R.A. sec. 10112(j)(6) y 10114. No obstante, debemos enfatizar que como toda actuación del Gobierno, ésta también se encuentra circunscrita por la Constitución. *De Jesús González v. A.C.*, 148 D.P.R. 255, 268 (1999).

Dispone la ley que el Decreto incluirá:

…aquellos términos y condiciones que sean consistentes con el propósito [de la ley] y que promuevan la creación de empleos mediante el desarrollo social y económico de Puerto Rico, tomándose en consideración la naturaleza de la petición o acción solicitada, así como los hechos y circunstancias relacionadas de cada caso en particular que puedan ser de aplicación. 13 L.P.R.A. sec. 10112(f).

Además, la ley señala que al ponderar una solicitud de este tipo, el Secretario de Estado podrá aceptar cualquier consideración ofrecida a beneficio de Puerto Rico y podrá denegarla cuando determine que no resulta en los mejores intereses económicos y sociales del país. 13 L.P.R.A. sec. 10111. De igual forma,

[e]n caso de reconsiderar la solicitud, el Secretario de Estado podrá aceptar cualquier consideración ofrecida a beneficio de Puerto Rico y podrá requerir y disponer cualquier otro término o condición que sea necesario para asegurar que dicha concesión será para los mejores intereses de Puerto Rico y los propósitos de desarrollo económico industrial… *Íd.*

Por lo tanto, cada Decreto es único y su negociación ha conllevado un estricto análisis de la solicitud y las

circunstancias particulares de los contratantes. El Decreto incluye, además, la participación del municipio concernido.

En virtud de lo anterior, y por disposición expresa de la Asamblea Legislativa, a los Decretos de Exención Contributiva les aplican las normas generales relativas a los contratos. *Qume Caribe, Inc. v. Srio. de Hacienda*, 153 D.P.R. 700, 730 (2001). Por lo tanto, sobre éstos aplica el principio de la autonomía de la voluntad de las partes, quienes "pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público", Art. 1207 Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3372, y por consiguiente, se obligan al cumplimiento de lo expresamente pactado y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3375. Véase, *De Jesús González v. A.C.*, *supra*.

Uno de los aspectos principales de este Contrato es la concesión de tasas fijas de contribución sobre el "Ingreso de Fomento Industrial (IFI)". Analicemos, entonces, este término clave para todo Decreto y medular para resolver la controversia ante nos. En lo pertinente, el IFI tiene el significado y alcance siguiente:

> (1) El ingreso neto de un negocio exento derivado de la operación declarada exenta por esta parte, computado de acuerdo con las secs.

8401 et seq. de este título, parte del "Código de Rentas Internas de Puerto Rico de 1994", ajustado por las deducciones especiales provistas por esta parte.

(2) El ingreso proveniente de las actividades de inversión elegibles descritas en el inciso (j) de esta sección.[14] 13 L.P.R.A. sec. 10101(a)(1)y(2).

Es sobre el IFI, según definido, que se calcula – de acuerdo a la tasa fija estipulada – la contribución sobre ingresos a la que está sujeto el negocio exento y sobre el que se le concede a éstos un sesenta por ciento (60%) de exención sobre las patentes municipales, arbitrios municipales y otras contribuciones municipales.[15] 13 L.P.R.A. secs. 10102 y 10105(b). Empero, tal como hemos expresado

[l]a Ley de Incentivos Industriales no es una ley de contribución sobre ingresos. Su propósito es establecer una exención contributiva a empresas que se dedican a ciertas actividades económicas que el estado, en el momento histórico en el cual se aprueba esta ley deseaba fomentar e incentivar. La Ley de Incentivos Industriales establece cuáles son dichas actividades exentas, la manera en que las corporaciones pueden solicitar la exención, el término de su duración, la forma en la cual la exención se hace vigente, las opciones que tiene la corporación para acogerse a la exención y otros extremos; pero no contiene disposiciones propias de

---

[14] Véase, 13 L.P.R.A. sec. 10101(j).

[15] Este por ciento puede ser mayor dependiendo de la industria o el tiempo transcurrido desde el inicio de sus operaciones. 13 L.P.R.A. sec. 10105(b). Además, el ingreso obtenido de las inversiones que cualifiquen bajo el inciso (j) de la Secc. 2 de la Ley Núm. 135, *supra*, está totalmente exento de contribución sobre ingresos, patentes municipales, arbitrios municipales y otras contribuciones municipales. 13 L.P.R.A. sec. 10101(j)(3).

una ley de contribución sobre ingresos o un código de rentas internas. Por lo tanto, la ley aplicable al IFI tributable en cuanto al proceso de tributación como tal, no es otra cosa que la Ley de Contribuciones sobre Ingresos.[16] *Qume Caribe, Inc. v. Srio. de Hacienda*, *supra*, pág. 726.

Previamente, en *Proctor Mfg. Corp. v. Srio. de Hacienda*, 91 D.P.R. 829 (1965), estudiamos la intención legislativa al aprobar la Ley Núm. 6 de 15 de diciembre de 1953, conocida como Ley de Incentivo Industrial de Puerto Rico de 1954, 13 L.P.R.A. secs. 10001 *et seq.*, y nos negamos a extender el concepto de "Ingreso de Fomento Industrial (IFI)" a los pagos recibidos bajo una póliza de seguro por concepto de beneficios netos dejados de percibir debido a un fuego. Esto, pues, era de una fuente distinta en su naturaleza y no se derivaba del tipo de actividades que propendían a la realización del propósito legislativo. Entonces, expresamos que era de aplicabilidad la regla de que las exenciones contributivas deben ser interpretadas restrictivamente, o sea, que no debe extenderse más allá del propósito legislativo discernible.[17]

---

[16] Sin embargo, el Código de Rentas Internas de Puerto Rico de 1994 aplica de manera supletoria a la Ley Núm. 135, *supra*, en la medida en que las disposiciones de la primera no estén en conflicto con ella. Sec. 19 de la Ley Núm. 135, supra, 1997 Leyes de Puerto Rico 699.

[17] Posteriormente, la Ley Núm. 8, *supra*, así como la Ley Núm. 135, *supra*, han incorporado como IFI "[e]l ingreso obtenido de pólizas de seguros por interrupción de negocio, siempre que no haya reducción en el nivel de empleo en el negocio exento como resultado del acto que dio lugar al cobro de tal ingreso". 13 L.P.R.A. sec. 10039(a)(6) y 10101(a)(6). Asimismo, la Ley Núm. 73, *supra*, señala que se considera IFI,

Sin embargo, desde *Textile Dye Works, Inc. v. Secretario de Hacienda*, *supra*, caso en el que se reclamaba una exención bajo la derogada Ley Núm. 2 de 20 de enero de 1956, conocida como Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico, hemos reconocido que

> …las exenciones industriales de contribuciones que concede el Gobierno de Puerto Rico no deben interpretarse como las antiguas exenciones contributivas las cuales eran privilegios, por cuya razón era beneficioso al interés público interpretarlos restrictivamente. Por el contrario, **las exenciones industriales de contribuciones deben interpretarse en forma consonante con su propósito creador.** Sólo así se cumple la intención legislativa y además esa interpretación fiel y razonable es la interpretación beneficiosa al interés público. **La exención industrial de contribuciones no es una gracia**, en el viejo sentido de la frase, que el Gobierno de Puerto Rico confiere sino que es un instrumento que utiliza Puerto Rico, para fomentar la industria y la inversión productiva… (Énfasis suplido). Véanse además, *P.R. Int. Paper Co. v. Srio. de Hacienda*, 100 D.P.R. 131, 135 (1971); *Industria Lechera v. Srio. de Hacienda*, 95 D.P.R. 839, 842 (1968).

Examinados los principios y normas aplicables a los incentivos industriales estudiemos, entonces, el poder tributario de los municipios.

## C. Poder tributario de los municipios

Los municipios son entidades jurídicas creadas por la Asamblea Legislativa al amparo de la Sec. 1, Art. VI, de la

---

"[e]l ingreso neto derivado por el negocio exento que posea un decreto otorgado bajo este capítulo, por concepto de pólizas de seguros por interrupción de negocio (*business interruption*), siempre y cuando no haya reducción en el nivel de empleo en el negocio exento como resultado del acto que dio lugar al cobro de tal ingreso". 13 L.P.R.A. sec. 10642(a)(5).

Constitución de Puerto Rico para atender las necesidades de la comunidad local. Art. VI, Sec. 1. Const. E.L.A., L.P.R.A., Tomo I; *Ortiz v. Municipio San Juan*, 167 D.P.R. 609 (2006); *First Bank de P.R. v. Mun. de Aguadilla*, 153 D.P.R. 198, 203 (2001); *Banco Popular de P.R. v. Mun. de Mayagüez*, 120 D.P.R. 692, 696 (1988). Es por ello que sólo poseen los poderes que le han sido expresamente delegados. *Ortiz v. Municipio San Juan*, *supra*; *First Bank de P.R. v. Mun. de Aguadilla*, *supra*; *Café Rico, Inc. v. Mun. de Mayagüez*, *supra*.

En cuanto al poder tributario de los municipios, hemos reconocido que se les ha otorgado un mayor grado de autonomía fiscal y de gobierno propio. *Mun. San Juan v. Banco Gub. Fomento*, 140 D.P.R. 873, 885 (1996). No obstante, "no tienen un poder inherente, independiente del Estado, para imponer contribuciones", *Levy, Hijo v. Mun. de Manatí*, supra, pág. 299, sino que varias leyes regulan esta facultad. Entre éstas se encuentran: la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, 21 L.P.R.A. secs. 4001 *et seq.*; la Ley Núm. 83 de 30 de agosto de 1991, según enmendada, conocida como Ley de Contribución Municipal sobre la Propiedad de 1991; la Ley Núm. 80 de 30 de agosto de 1991, según enmendada, conocida como Ley del Centro de Recaudación de Ingresos Municipales, 21 L.P.R.A. secs. 5801 *et seq.*, y la Ley Núm.

113 de 10 de julio de 1974, según enmendada, conocida como Ley de Patentes Municipales, 21 L.P.R.A. secs. 651 *et seq.*[18]

Respecto a estas facultades contributivas, nuestro ordenamiento ha favorecido claramente una interpretación amplia para que los municipios "puedan proveer más servicios directos a sus ciudadanos". *First Bank de P.R. v. Mun. de Aguadilla, supra; Lever Bros. Export Corp. v. Alcalde S.J., supra; Banco Popular de P.R. v. Mun. de Mayagüez, supra.* Por lo tanto, cuando hay autoridad de ley para ello, no estamos inclinados a intervenir con la regulación económica municipal por ser una función primordialmente legislativa. *Banco Popular de P.R. v. Mun. de Mayagüez, supra.*

Sin embargo, recalcamos que los municipios quedan facultados y limitados según determine la Asamblea Legislativa. De esta forma, a pesar de que las legislaturas municipales fijan los tipos contributivos aplicables a negocios sujetos al pago de patentes, la Asamblea Legislativa ha dispuesto el por ciento máximo a fijar dependiendo del tipo de patente, y ha eximido de su pago a ciertos negocios, ingresos y personas. 21 L.P.R.A. sec. 651c, 651d, 651h. Otras leyes también limitan la facultad

---

[18] La Ley Núm. 113 de 10 de julio de 1974, conocida como Ley de Patentes Municipales, 21 L.P.R.A. secs. 651 *et seq.*, ha sido enmendada en múltiples ocasiones. Adjudicamos el caso de autos al amparo de la ley en vigor al momento de los hechos.

impositiva de los municipios, una de ellas es la propia Ley Núm. 135, *supra*, que otorga a los negocios exentos, como norma general, un sesenta por ciento (60%) de exención sobre las patentes municipales y arbitrios municipales, entre otras contribuciones.[19] 13 L.P.R.A. sec. 10105(b).

En vista de lo anterior, y del poder de la Asamblea Legislativa para permitir a los municipios imponer y cobrar contribuciones, la Ley Núm. 113, *supra*, les ha autorizado a imponer el pago de patentes no incompatibles con la tributación impuesta por el Estado y dentro de sus límites territoriales. 21 L.P.R.A. sec. 651b; *First Bank de P.R. v. Mun. de Aguadilla*, *supra*; *Lever Bros. Export Corp. v. Alcalde S.J.*, 140 D.P.R. 152 (1996); *Banco Popular de P.R. v. Mun. de Mayagüez*, supra. Esto, pues, la tributación municipal responde "a la premisa de que los negocios sitos

---

[19] Cada ley de incentivos ha sido desarrollada para atender las necesidades del momento histórico que le competía. Por su parte, la Ley Núm. 73, *supra*, identifica como parte de la política pública de Puerto Rico el

> "[g]arantizar una relación entre la industria y el Gobierno de Puerto Rico, que se fundamente en la estabilidad, certeza y credibilidad. Todos los componentes de nuestra sociedad deben ofrecer un apoyo férreo a este programa y al respeto y cumplimiento de los compromisos que forman parte del mismo, por el bien de Puerto Rico". 13 L.P.R.A. sec. 10641(4).

La Asamblea Legislativa buscó, entre otras cosas, reducir la fricción innecesaria e incertidumbre entre los municipios y los inversionistas. Además, la Sec. 14(c)(1) de la misma ley añade de forma expresa que

> "una vez concedido un decreto bajo este capítulo, ninguna agencia, instrumentalidad pública, subdivisión política, corporación pública, o municipio, sea éste autónomo o no, del Gobierno de Puerto Rico que no sea el Secretario de Desarrollo o el Gobernador, podrá impugnar la legalidad de dicho decreto o cualquiera de sus disposiciones". 13 L.P.R.A. sec. 10654(c)(1).

en su territorio se benefician de la organización local para efectuar sus actividades de interés pecuniario". *First Bank de P.R. v. Mun. de Aguadilla*, supra, pág. 204, citando a *Banco Popular de P.R. v. Mun. de Mayagüez*, supra, pág. 700.

Las patentes constituyen una "contribución impuesta y cobrada por el municipio… a toda persona dedicada con fines de lucro a la prestación de cualquier servicio, a la venta de cualquier bien a cualquier negocio financiero o negocio en los municipios". 21 L.P.R.A. sec. 651a(a)(16). Éstas se calculan a base del volumen de negocios generado, término definido de la manera siguiente

(i) *Volumen de negocios*.-Significa los ingresos brutos que se reciben o devenguen por la prestación de cualquier servicio, por la venta de cualquier bien, o por cualquier otra industria o negocio en el municipio donde la casa principal realiza sus operaciones, o los ingresos brutos que se reciban o se devenguen por la casa principal en el municipio donde ésta mantenga oficinas, almacenes, sucursales, plantas de manufactura, envase, embotellado, procesamiento, elaboración, confección, ensamblaje, extracción, lugar de construcción, o cualquier otro tipo de organización, industria o negocio para realizar negocios a su nombre, sin tener en cuenta sus ganancias o beneficios.

(ii) *Ingresos brutos*.-Significa la totalidad de los ingresos de fuentes dentro y fuera de Puerto Rico que sean atribuibles a la operación que se lleva a cabo en cada municipio, excluyendo todos los ingresos, tales como interés y dividendos provenientes de la inversión por un individuo de sus propios fondos, de la posesión de acciones

corporativas u otros instrumentos de inversión.[20] 21 L.P.R.A. sec. 651a(7)(A).

Por otro lado, el concepto "atribuibles a la operación" incluye "la totalidad de los ingresos derivados dentro y fuera de Puerto Rico que reciba o devengue una persona relacionada con la explotación de una industria o negocio en Puerto Rico". 21 L.P.R.A. sec. 651a(15). Al respecto hemos expresado que

> …el factor determinante es que el ingreso se produzca como consecuencia de los negocios que la persona, natural o jurídica, desempeña en el municipio, lo cual implica que el ingreso no hubiese sido generado a no ser por las operaciones llevadas allí a cabo. *The Coca-Cola Co. v. Mun. de Carolina*, 136 D.P.R. 216, 221 (1994). Véanse además, *First Bank de P.R. v. Mun. de Aguadilla*, supra; *Lever Bros. Export Corp. v. Alcalde S.J.*, supra, pág. 161; *Banco Popular de P.R. v. Mun. de Mayagüez*, supra.

Repasados estos principios y normas, apliquémoslas al caso de autos.

## III

Dentro del marco jurídico antes enunciado procedamos a resolver la controversia de autos.

---

[20] Esta definición sufrió cambios significativos con posterioridad a nuestras expresiones en los casos *The Coca-Cola Co. v. Mun. de Carolina*, 136 D.P.R. 216, 221 (1994) y *Banco Popular de P.R. v. Mun. de Mayagüez*, 120 D.P.R. 692, 696 (1988).

El Código de Rentas Internas de 1994, *supra*, es posterior a la enmienda a la Ley Núm. 113, *supra*, mediante la que se introduce la definición de "atribuibles a la operación". Véase, Ley Núm. 82 de 30 de agosto de 1991. Para entonces estaba en vigor la Ley Núm. 91 del 29 de junio de 1954, según enmendada, conocida como "Ley de Contribuciones sobre Ingresos de 1954" que incluía una sección similar a la del Código de Rentas Internas de 1994, *supra*.

En esencia, las peticionarias argumentan que los Decretos de Exención Contributiva Industrial de los cuales son concesionarias tienen fuerza vinculante sobre todas las agencias, instrumentalidades y municipios. Señalan que aun cuando los ingresos de fuentes fuera de Puerto Rico – como los que son examinados en el caso de autos – no están sujetos a tributación alguna en Puerto Rico, los Decretos pactados establecían la tributación de los mismos a una tasa reducida. Esto fue negociado como parte de una estrategia legal contributiva global.

Las peticionarias aducen que en los Decretos, los ingresos de fuentes fuera de Puerto Rico - según definidos en la Sec. 1123(c) del Código, *supra* - serían tratados como ingresos de fuentes dentro de Puerto Rico e "Ingresos de Fomento Industrial (IFI)" sujetos a tributación en Puerto Rico a la misma tasa que los ingresos típicos de sus operaciones exentas. Por consiguiente, entienden que éstos gozan de un sesenta por ciento (60%) de exención sobre las patentes municipales. Añaden que es por ello que los ingresos fueron reportados y tributados a base de un cuarenta por ciento (40%). La Compañía de Fomento Industrial de Puerto Rico sostiene la misma postura al respecto.

*A contrario sensu*, el Municipio argumenta que la Ley Núm. 135, *supra*, establece taxativamente los ingresos exentos al pago de contribuciones sobre ingresos y patentes

municipales mediante el término "Ingreso de Fomento Industrial (IFI)". De esta forma, no podrá considerarse IFI otro ingreso que no sea aquél que provenga de actividades reconocidas en la ley. Añade que toda exención concedida por medio de un Decreto de Exención al amparo de la Ley Núm. 135, *supra*, tiene que estar autorizado expresamente por el estatuto. En cambio, la alegada concesión no lo estuvo. Además, señalan que los intereses recibidos por concepto de préstamo son de fuentes de fuera de Puerto Rico y de actividades económicas atribuibles a su operación en el municipio tras realizarse y materializarse dentro de su jurisdicción geográfica.[21] Por lo tanto, sostiene que por los ingresos no ser IFI, las peticionarias están obligadas a pagar el cien por ciento (100%) en concepto de patentes municipales.

Al aplicar las disposiciones pertinentes de la Ley Núm. 120, *supra*, determinamos que los ingresos en cuestión provienen de fuentes de fuera de Puerto Rico. Esto, pues, no son intereses que provengan de personas residentes. Concluimos, además, que tampoco son tributables por el Gobierno.

La letra de la ley es clara cuando expresa que, como regla general, ningún ingreso, ganancia o pérdida de fuentes de fuera de Puerto Rico se considerará como ingreso realmente relacionado con la explotación de una industria o

---

[21] Alegato del Muncipio, págs. 6 y 9.

negocio en Puerto Rico, salvo contadas excepciones. En el caso de autos, a los intereses no les es de aplicación ninguna de las excepciones a dicha regla general. Por lo tanto, regresamos al punto de partida: es sobre el ingreso neto realmente relacionado con la explotación de una industria o negocio que una corporación extranjera, como las peticionarias, tributarían. No sólo la ley es clara sino que, los estatutos contributivos deben interpretarse estrictamente a favor de la no imposición de la contribución. Nada nos indica que la intención fuera otra.

Como señaláramos, los intereses en cuestión no son parte del ingreso tributable por éstas, pero no sólo a nivel estatal, sino que tampoco son tributables a nivel municipal. El municipio está limitado por las facultades que le han sido concedidas y la Ley Núm. 113, *supra*, no confiere autoridad para imponer la patente sobre los ingresos en cuestión. A pesar de que el ingreso bajo análisis es un ingreso de fuentes de fuera de Puerto Rico, no está relacionado con la explotación de una industria o negocio en Puerto Rico como analizáramos previamente de conformidad con el Código de Rentas Internas de 1994, *supra*. La falta de relación afecta tanto al gobierno central como al Municipio. Este último factor es esencial para que el Municipio tenga facultad tributaria sobre el mismo.

Por lo tanto, si el ingreso no se hubiera considerado IFI, no tributaría ante el Gobierno Central ni pagaría patentes municipales. No obstante, no podemos limitarnos al análisis de si es tributable o no bajo el Código de Rentas Internas de 1994, o la Ley Núm. 113, *supra*, puesto que hay un Contrato entre el Gobierno de Puerto Rico y las peticionarias que ha sido suscrito al amparo de la Ley Núm. 135, *supra*.

Las peticionarias pactaron con el Gobierno de Puerto Rico unos Decretos de Exención Contributiva que consideraban los ingresos de fuentes fuera de Puerto Rico como IFI y tributarían según la tasa fijada. Esto, a pesar de que no son *per se* tributables y de que no forman parte de ninguna de las instancias expresadas por la ley como IFI. Por un lado, no eran derivados de la operación declarada exenta, es decir, de la producción y venta de drogas. Por otro lado, tampoco eran actividades de inversión elegibles descritas en la Ley Núm. 135, *supra*. Ante lo anterior, llama entonces nuestra atención el Municipio al argüir que mediante el Decreto de Exención no podía concederse una exención a otro tipo de ingreso no especificado en la ley.

No nos persuade el argumento del Municipio al examinar los hechos del caso de autos. La Asamblea Legislativa ha optado por otorgar incentivos contributivos, incluyendo la concesión de tasas fijas de contribución sobre el IFI.

Esto, con el objetivo de propiciar el máximo desarrollo económico industrial de Puerto Rico y lograr la creación de empleos e inversión directa en la Isla. Por ello, las tasas concedidas mediante Decreto son menores a las tasas que tendría que pagar un negocio no exento. Por lo tanto, el listado de ingresos considerados IFI solamente enumera ingresos que de ordinario son tributables.

Asimismo, en consideración de las necesidades cambiantes de la industria y para asegurar que Puerto Rico se mantenga competitivo a nivel mundial, la Asamblea Legislativa ha creado un procedimiento que otorga gran discreción al funcionario contratante para aceptar ofertas o requerir condiciones que sean en los mejores intereses económicos y sociales de nuestra Isla. No sólo esto, sino que además la Ley Núm. 135, *supra*, da fuerza de Contrato al Decreto resultante y dispone que su determinación será final y no revisable. Esto no tiene otro objetivo que el de dar seguridad y confianza a las corporaciones que hacen negocios en Puerto Rico.[22]

---

[22] La Asamblea Legislativa ha mantenido la condición de Contrato a los Decretos de Exención desde la primera ley que promulgara los incentivos contributivos. Así, en la Exposición de Motivos de la Ley Núm. 184, *supra*, expresó que

> "A fin de que el incentivo que por la presente ley se brinda, en forma de exención contributiva, para fomentar el desarrollo industrial de Puerto Rico, sea un incentivo de base cierta y de inconfundible seguridad, la Asamblea Legislativa de Puerto Rico hace constar que considera toda exención contributiva concedida bajo las disposiciones de esta Ley como un contrato o convenio entre el Gobierno de Puerto Rico y la industria que reciba la exención, y que es su propósito no aprobar legislación alguna que

En el caso de autos, el ingreso no hubiera estado sujeto a imposición contributiva en Puerto Rico por lo que no estamos ante una exención contributiva. Por el contario, nos encontramos ante la inserción de un ingreso como nos señala la Compañía de Fomento Industrial.[23] No obstante, el Secretario de Estado determinó que era a favor de los mejores intereses económicos y sociales de Puerto Rico permitir que unos ingresos tributaran a nivel estatal y municipal como IFI, o sea, a una tasa atractiva para las peticionarias, en vez de que no tributaran suma alguna. No le compete a los tribunales pasar juicio sobre la sabiduría de esa determinación, particularmente cuando no se han producido resultados contrarios al propósito de la ley y no se ha señalado transgresión alguna de la Constitución. Tampoco son ingresos por los que las peticionarias tuvieran que pagar las tasas ordinarias.

La política pública económica y fiscal de Puerto Rico tiene que coordinar a todos sus entes, entre ellos los municipios. Es por ello que éstos participan del

---

menoscabe o limite tal exención o pueda frustrar los fines de esta Ley". 1944 Leyes de Puerto Rico 485.

[23] Véase, Alegato de la *Amicus Curiae* Compañía de Fomento Industrial de Puerto Rico, pág. 17. La Compañía de Fomento Industrial expresa que el Gobierno solamente tenía dos (2) opciones: (1) no recibir tributación por esos ingresos o (2) negociar para que la empresa tributara a una tasa atractiva que permita capturar recaudos tributarios que no estarían disponibles de otra forma. Se seleccionó esta última opción. Añade que este tipo de decisiones es parte de la realidad comercial de los negocios globales, los cuales "en muchas ocasiones se ven obligadas a estructurar sus negocios por razones atribuibles a las reglas tributarias de sus respectivos países de origen". Alegato de la *Amicus Curiae* Compañía de Fomento Industrial de Puerto Rico, págs. 13 y 15.

procedimiento que finaliza en un Decreto. Ciertamente los municipios gozan de gran autonomía fiscal y están autorizados a imponer el pago de patentes. No obstante, estas contribuciones no pueden ser incompatibles con la tributación impuesta por el Estado y tienen que estar dentro de las facultades que le han sido conferidas. En el caso de autos, el Municipio está obligado por el Decreto otorgado.

Por lo antes expuesto, revocamos la Sentencia recurrida.

Se dictará Sentencia de conformidad.


                                    Mildred G. Pabón Charneco
                                         Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pfizer Pharmaceuticals, Inc. y Pfizer Pharmaceuticals, Limited | *Certiorari* |
| Peticionarios | |
| v. | CC-2008-0607 |
| Municipio de Vega Baja | |
| Recurrido | |

SENTENCIA

En San Juan, Puerto Rico, a 17 de junio de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia del Tribunal de Apelaciones.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton emite Opinión de Conformidad. La Jueza Asociada señora Fiol Matta concurre con el resultado sin opinión escrita. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Pfizer Pharmaceuticals, Inc. y
Pfizer Pharmaceuticals, Limited

     Peticionarios

      v.                        CC-2008-607

Municipio de Vega Baja

      Recurrido



Opinión de Conformidad emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON



San Juan, Puerto Rico, a 17 de junio de 2011.

La Opinión que emite hoy este Tribunal avala las expectativas de quienes suscribieron contratos de exención contributiva con la Rama Ejecutiva a los fines de establecer los parámetros de su operación comercial en la Isla, y, de esa forma, brinda seguridad jurídica a transacciones análogas.

Con la Ley de Incentivos Contributivos de 1998, Ley Núm. 135 de 2 de diciembre de 1997, 13 L.P.R.A. secs. 10101 *et seq* (Ley Núm. 135), se pretendió fortalecer la base industrial de Puerto Rico en aras de forjar mayores oportunidades de empleo y desarrollo económico. Son los propósitos de política pública, establecidos por la Asamblea Legislativa de

Puerto Rico en dicha ley, los que deben regir nuestra decisión en este caso.

I.

Pfizer Pharmaceuticals, Inc. es una corporación organizada bajo las leyes del Estado de Delaware y, Pfizer Pharmaceuticals Limited es una corporación organizada bajo las leyes de las Islas Caimán. Ambas entidades están autorizadas para realizar negocios en Puerto Rico. Las dos, además, son subsidiarias de Pfizer, Inc., la empresa matriz, que está organizada bajo las leyes de Delaware y no hace negocios en Puerto Rico. Durante los años en controversia, tanto Pfizer Pharmaceuticals como Pfizer Pharmaceuticals Limited operaron fábricas de manufactura de fármacos en el Municipio de Vega Baja (las fábricas en Vega Baja).

Estas fábricas en Vega Baja se beneficiaban de unos decretos de Exención Contributiva Industrial para la producción, venta y distribución de fármacos bajo la Ley Núm. 135, *supra*, que habían sido obtenidos de parte del Departamento de Estado por sus anteriores operadores. En los referidos decretos se pactó que los ingresos de fuentes fuera de Puerto Rico, según determinado en la Sec. 1123(c) del Código de Rentas Internas de 1994, 13 L.P.R.A. sec. 8523, serían considerados "Ingreso de Fomento Industrial" (IFI), que están sujetos a una exención contributiva de 60%, conforme al propio decreto.

Dicha sección, en lo pertinente, define ingresos como:

> **(c) Ingreso bruto de fuentes fuera de Puerto Rico.** Las siguientes partidas de ingreso bruto serán consideradas como ingreso de fuentes fuera de Puerto Rico:
>
> **(1)** Intereses que no sean los derivados de fuentes dentro de Puerto Rico según se dispone en el inciso (a)(1) de esta sección. Íd.

De ordinario, dichos ingresos no serían tributables, porque bajo la Sec. 1022(b)(8)(a) del Código de Rentas Internas, los ingresos de fuentes fuera de Puerto Rico están exentos, 13 L.P.R.A. sec. 8422(b)(8)(a), y, porque bajo la Sec. 1123(a), *supra*, los ingresos tributables por intereses son aquellos donde el pagador está en Puerto Rico. No obstante, como se expone más adelante, la Ley Núm. 135, *supra*, permite que los decretos incluyan cualquier disposición que adelante los propósitos del estatuto.

Por otro lado, el texto de los Decretos establece que "[f]or purposes of this provision, IDI [(Industrial Development Income), en español, "IFI"], shall include income received on investments described in section 2(j) of the 1998 Act, and in the case of [Pfizer], IDI shall include the income of [Pfizer] **that is derived from sources outside of Puerto Rico.**"(Énfasis nuestro). Es decir, que a pesar de que el texto de la Ley Núm. 135, *supra*, no incluye los intereses generados fuera de Puerto Rico en el listado de ingresos elegibles para la exención, Pfizer se obligó a incluir dichos ingresos en el IFI y, a su vez, el Estado se obligó a reconocerle la exención a dichos ingresos. Por su parte, el IFI, además, está sujeto a una exención

contributiva de 60% frente a impuestos municipales, bajo la Ley Núm. 135, *supra*.

Así las cosas, durante los años fiscales de 1999-2002, las fábricas en Vega Baja recibieron unos ingresos de préstamos realizados a favor de la compañía matriz y de una entidad afiliada en Dublín, Irlanda. Para dichos años, las fábricas en Vega Baja pagaron la patente municipal y sometieron la documentación necesaria con su información financiera. En los estados financieros, reconocieron una ganancia sobre los intereses que generaron esos préstamos como IFI. Por lo tanto, incluyeron sólo el 40% del ingreso como ingreso tributable, aplicándole así la exención de 60% al ingreso de los referidos préstamos. En consecuencia, el Municipio de Vega Baja notificó unas deficiencias, intereses y penalidades que ascendían a $3,027,216.56. El Municipio sostiene que ese ingreso no es elegible para la exención bajo la Ley Núm. 135, *supra*, por no ser parte de una actividad de manufactura local. Por ello, debe tributar el 100% de ese ingreso.

Así las cosas, las fábricas en Vega Baja presentaron una demanda impugnando la contribución requerida. Tras varios trámites, el Tribunal de Primera Instancia dejó sin efecto tales deficiencias al concluir que los Decretos de Exención Contributiva eran claros al disponer que los ingresos de fuentes fuera de Puerto Rico constituían IFI y se beneficiaban de la exención. Inconforme, el Municipio acudió ante el Tribunal de Apelaciones y éste revocó. Dicho foro determinó que los ingresos por intereses recibidos por

los préstamos no provenían de las operaciones autorizadas de manufactura y venta de fármacos, por lo que no eran elegibles para la exención. Insatisfechas, las fábricas en Vega Baja acuden ante nos. A ellas se les unió en calidad de *amici curiae* la Pharmaceutical Industry Association of Puerto Rico, la Asociación de Industriales y la Compañía de Fomento Industrial.

## II.

Nos corresponde, entonces, determinar si los ingresos recibidos producto de los préstamos hechos a la matriz de Pfizer y a la afiliada en Irlanda deben estar exentos bajo los Decretos a las corporaciones de Pfizer que hacen negocios en Puerto Rico.

Como expresa la Opinión del Tribunal, la Asamblea Legislativa tiene el poder para imponer contribuciones y es en el Código de Rentas Internas de Puerto Rico, *supra*, donde se define el ingreso tributable para las distintas entidades. Entre sus disposiciones relevantes se encuentra la Sec. 1123(c), *supra,* que establece que los ingresos producto del pago de intereses de fuentes fuera de Puerto Rico no son tributables. Asimismo, hemos expresado que, en el ámbito tributario, cuando surgen dudas sobre los privilegios o gracias que concede el Estado excepcionalmente, existe una presunción a favor de la no exención. No obstante, ello debe interpretarse, como en el presente caso, de manera que no se frustre la intención legislativa. Orsini García v. Srio. de Hacienda, 177 D.P.R.

596 (2009); Interior Developers v. Mun. de San Juan, 177 D.P.R. 693 (2009).

Así, al analizar esos propósitos legislativos, es forzoso señalar que los Decretos bajo la Ley Núm. 135, *supra*, incluyen aquellos términos y condiciones que sean consistentes con el propósito de la ley y que promuevan la creación de empleos. 13 L.P.R.A. sec. 10112(f).

Por otra parte, los municipios poseen el poder para imponer el cobro de contribuciones, sujeto a la propia legislación estatal. Por ello, las patentes impuestas por los municipios no pueden ir por encima de las leyes tributarias, incluyendo las que reconocen exenciones. First Bank de P.R. v. Mun. de Aguadilla, 153 D.P.R. 198 (2001); Banco Popular v. Mun. de Mayagüez, 120 D.P.R. 692 (1988).

Por lo tanto, los ingresos de los préstamos devengados por las fábricas de Vega Baja, de ordinario, no son tributables, pero las fábricas se obligaron a tributarlos en los mismos Decretos que le reconocen la referida exención. Por consiguiente, la Opinión del Tribunal resuelve correctamente que los ingresos en controversia están sujetos a la exención de 60% sobre las tasas de patentes municipales. Ello, pues, las fábricas de Vega Baja tienen razón cuando aducen que, en los Decretos, los ingresos de fuentes fuera de Puerto Rico, según definidos en la Sec. 1123(c) del Código de Rentas Internas, *supra*, serían tratados como IFI, sujetos a la misma tasa que los ingresos típicos de sus operaciones exentas.

De esa manera, se llega a un resultado contrario a lo que planteaba el Municipio, en términos de que la Ley Núm. 135, *supra*, establece taxativamente los ingresos exentos al pago de contribuciones sobre ingresos y patentes municipales mediante la definición del término IFI. Esto, pues el Municipio arguye que la totalidad del ingreso es tributable bajo la Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1994, pero, pierde de vista que esos ingresos tributables bajo dicho cuerpo normativo son ingresos únicamente "relacionados con la operación" o con la "explotación de una industria o negocio en Puerto Rico". 21 L.P.R.A. sec. 651 a (15). Ese no es el caso de los ingresos por concepto de los intereses en controversia, pues, como hemos señalados, el Código de Rentas Internas define en la Sec. 1123 (a) y (c), los intereses devengados dentro de Puerto Rico como aquellos que provienen de pagadores dentro de la jurisdicción. 13 L.P.R.A. sec. 8523(a) y (c).

III.

Por todo lo anterior, estamos conforme con la Opinión que emite hoy este Tribunal. En esencia, dicha Opinión resuelve correctamente, a favor de las corporaciones de Pfizer en Puerto Rico, que lo dispuesto en sus Decretos de exención contributiva es la ley entre las partes.

A pesar de que la Ley Núm. 135, *supra*, que crea los incentivos de exención contributiva aplicables, no incluye los intereses de fuentes fuera de Puerto Rico como ingreso elegible, dichos ingresos no son de otra manera tributables

en Puerto Rico. Es decir, que Pfizer nos solicitó que le permitiéramos tributar ingresos que de otra manera no serían tributables en Puerto Rico con el objetivo de adelantar los propósitos de la Ley Núm. 135, *supra*. Ello, a nuestro entender, es cónsono con los propósitos de las leyes de incentivos industriales, incluida, como se ha dicho, la referida Ley Núm. 135, *supra*.


                              Federico Hernández Denton
                                   Juez Presidente